The City of Chicago *v.* Larned et al.

# The City of Chicago

*v*

# Edwin C. Larned *et al.*

1. TAXATION. The principles of "equality" and "uniformity," are indispensable to all legal taxations, general or local.

2. SPECIAL ASSESSMENTS. Apart from the exercise of the taxing powers, property cannot be taken to satisfy a special assessment, unless under the power of eminent domain.

3. EMINENT DOMAIN. The power of eminent domain can only be exercised under the constitution, by making just compensation.

4. SAME, AND POWER OF TAXATION. The exercise of the right of eminent domain, and the power of taxation, are limited under our constitution, and there exists no power in any department of the government, or in any of its subdivisions, to apportion taxes, whether of a general or local character, except on the principles of equality and uniformity.

5. PUBLIC IMPROVEMENTS — *assessments therefor.* In public improvements which concern the whole public, there should be assessed to each lot the special benefits it will derive from the improvement, charging such benefit on the lots, the residue of the cost to be paid by equal and uniform taxation.

6. SAME. An assessment for improvements made on the basis of the *frontage* of lots upon the street to be improved, is invalid, containing neither the element of equality nor uniformity, if assessed under the taxing powers, and equally invalid if in the exercise of the right of eminent domain, no compensation being provided.

WRIT OF ERROR to the Superior Court of Chicago.

This was a writ of error to the Superior Court of Chicago, to bring up the record of a judgment upon a special assessment warrant for filling and paving, with "Nicholson pavement," Wabash avenue, from Randolph street to Fourteenth street.

The court sustained some of the objections made by the owners of the lots assessed, and gave judgment against the city for the costs.

The arguments by the counsel on both sides, and the opinion of the court, so fully present the questions as to render a particular statement unnecessary.

The errors assigned are as follows:

The court erred in sustaining the objections filed by the said defendants to the application made by the collector for judgment against the several lots and parcels of land in said objections set forth.

The court erred in refusing to render judgment in favor of the city of Chicago against the several lots and parcels of land set forth in the objections filed by said defendants.

The judgment rendered by said court in favor of the said defendants, was contrary to the law and evidence, and should have been for the plaintiff.

Mr. FRANCIS ADAMS, city attorney, for the plaintiffs in error.

The objections of defendants as to the unconstitutionality of section 21, chapter 7, of the charter, are necessarily based upon the premises that assessments of the character contemplated and authorized by this section, are *taxes* within the meaning of the foregoing constitutional provision. Unless, therefore, this proposition can be sustained, the objections are insufficient.

It has been decided by this court in the following cases, that a special assessment to defray the expenses of a particular local improvement, as the opening or improvement of a street in a city, is not a tax. *The Canal Trustees* v. *The City of Chicago*, 12 Ill. 403; *The City of Chicago* v. *Colby*, 20 id. 614; *McBride* v. *The City of Chicago*, 22 id. 574; *City of Peoria* v. *Kidder*, 26 id. 352; *Town of Pleasant* v. *Kost*, 29 id. 494.

In the case in 26 Ill. the court expressly decided that an assessment to defray the expense of opening a street, is not a tax, and is not embraced in or regulated by the constitutional provisions relative to taxes. The court say, id. 357, "*It is the*

*established doctrine of this court that assessments of this character are not taxes.*

If assessments of the character authorized by section 21, chapter 7, of the charter, *supra,* are not taxes within the meaning of the constitutional provisions relative to taxation, it follows that the power of the legislature over the subject is plenary; because *constitutional provisions, so far as they relate to the power of a State legislature, are not grants, but limitations of power, and the rule is that such provisions must be strictly construed. The People, &c.,* v. *Wilson,* 15 Ill. 392; *Prettyman* v. *The Supervisors, &c.,* 19 id. 411; *Firemen's Benevolent Association* v. *Loundsberry,* 21 id. 513–515. (The last is a very important case as to the power of a State legislature.) *People* v. *Field,* 2 Scam. 95; *Sawyer* v. *City of Alton,* 3 id. 127; *Mason* v. *Wait et al.,* 1 Gilm. 685; *Fletcher* v. *Peck,* 2 Pet. Cond. 317; *Williams* v. *Mayor of Detroit et al.,* 2 Mich. 363, 364.

But it is contended by the defendants that the decisions of this court, which distinguish between special assessments and taxes, have no application in this case, and are not authorities for the constitutionality of this assessment, for the reason, as alleged by the defendants, that in all the assessments passed upon by this court, there has been an estimate of benefits and damages accruing from the improvements to the property assessed, and the assessments have been made in proportion to benefits; whereas, in this case, as they say, the charter makes no provision for, nor does it contemplate an assessment of benefits.

In answer to this objection:

1. Chap. 7, sec. 1, clause 2, Rev. Charter, 67, empowers the common council to cause any street to be filled, curbed, paved, &c.

Sec. 2, chap. 7, provides that "the expenses of any improvement mentioned in the foregoing section shall be defrayed, save as is herein otherwise provided, *by a special assessment upon the real estate benefited thereby,* to be levied in the manner hereinafter prescribed."

Sections 2 and 21, of chap. 7, relating to the same subject

matter, must be construed together. It is a well settled rule of construction that "one part of a statute must be so construed with another that the whole may, if possible stand, *ut res magis valeat quam pereat.*" 1 Blacks. Com. 89.

A fair construction of sections 2 and 21, *supra*, would seem to be that when the improvement of a street is proposed, the common council are empowered by the charter to determine whether the property fronting or abutting upon the contemplated improvement will be benefited by the improvement to the amount requisite to defray the expenses of it, and if so to order it.

If this construction be correct, the common council — a disinterested tribunal — in every instance in which they order an improvement, make an estimate that the benefits to the property to be assessed will be equal to the cost of the contemplated improvement, and the passage by them of an ordinance directing the making of the improvement is conclusive as to their opinion.

Viewed in this light, this assessment is clearly within the purview of the decisions of this court, *supra*.

2. This court has not distinguished between special assessments and taxes, as contended by defendants, *solely* upon the ground that in the assessment cases which have been before the court, benefits have been estimated, and property assessed, in proportion to the benefits derived from the improvements.

In the *Canal Trustees et al.* v. *The City of Chicago*, 12 Ill. 406, the assessment was made to defray the expense of opening a street in the city of Chicago. The grant to the trustees contained the following clause: "*The said lands and lots shall be exempt from taxation of every description by and under the laws of this State*," &c.

Per Curiam: "*In our opinion the exemption must be held to apply only to taxes levied for State, county and municipal purposes. A tax is imposed for some general or public object, &c.* Again: "*The assessment in question has none of the distinctive features of a tax. It is imposed for a special purpose, and not for a general or public object.*"

It is apparent that the court held in this case that the assessment in question was not a tax, for the reason among others given in the opinion, that it was levied *not for a municipal, general, or public, but for a special purpose.*

The distinction made in this case between governmental and municipal purposes, and private and special purposes, is fully recognized and sustained by the Court of Appeals in New York, in *Loyd* v. *Mayor, &c., of New York,* 1 Seld. 374, (1851,) and by other decisions, *post.*

The decisions in 20, 22 and 26 Ill. cited, *ante,* do not proceed upon the distinction contended for by defendants in error.

In *Pray* v. *The Northern Liberties,* 31 Penn. 71, (1852,) which was an action to recover back money paid under protest on an assessment against the owner of a front lot for paving, &c., the court say:

" The assessment or charge for paving was not a tax, either technically speaking, or according to the purview of the acts of assembly on the subject. *A tax is generally understood to mean the imposition of a duty or impost for the support of government. In that sense it is understood all the world over, as contradistinguished from a mere municipal or corporate charge for the improvement of property within the corporation or municipal bounds, &c.*

Special assessments for local improvements do not derive their distinctive name and character, and are not distinguished from taxes, from the fact, as contended by defendants in error, that in some instances special tribunals are established to estimate the benefits and damages consequent to the contemplated improvement, and to fix the amounts to be assessed upon the property benefited, in proportion to benefits.

The true feature which distinguishes a special assessment from a tax is, that the assessment is made to defray the expenses of a particularly local improvement, in which improvement the owners of the land fronting or abutting upon it *have a special interest, over and above the interest of the general public. Foster* v. *The Commissioners of Wood County,* 9 Ohio, 544, 1859.

This was an assessment under an act to incorporate a free turnpike road, of eight cents per acre on all lands within a given distance on each side of the road. Id. 542.

It was contended by counsel that the assessment was a special tax and repugnant to the constitution of Ohio.

The only constitutional provision relating to the subject matter is art. 12, sec. 2, Cons. of 1851, Swan's Rev. Stat. of Ohio, 1854, page 26, which is as follows:

"Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money," &c.

It will be perceived that the assessment was not *ad valorem*, and could not be sustained as a tax.

*Per Curiam.* "The only *personal* interest is that which those who live on land abutting upon a public highway have, as compared with other citizens of the county or state. *It is such interest which sustains the assessment as distinguished from a tax.* The same principle is applied in charging upon cities and towns, the repair of the highways which pass through them, and in allowing an assessment by the front foot on the real estate abutting on the highway. The only difference between such cases and the present is that in the latter the assessment is by the acre. *It has the principle of benefit, which is sufficient when ascertained and fixed by law in reference to a particular locality, as compared with other localities, and need not be limited to particular pieces of property as compared with other pieces.*

If the legislature directs that, upon a road being constructed in a particular section of the State, there shall be an assessment on account of the benefit of the locality, of a certain rate per acre, or a certain per cent. on the valuation, *this would be equally an assessment, as if a commission had been established to ascertain the benefit which each individual owner, as compared with others would receive.* In this view we see no ground to sustain the objection, that what the legislature directed in this case was not an assessment.

The common council of Sacramento were authorized by the city charter to levy, by ordinance, special assessments for grading or otherwise improving any portion of the streets or alleys of the city, on the adjacent property situated on the line of the improvement. *Burnett* v. *Mayor &c. of Sacramento,* 12 Cal. 77, 1859.

It was objected that the charter was in violation of art. 11, sec. 13 of the constitution, which is as follows:

"Taxation shall be equal and uniform throughout the State. All property in this State shall be taxed in proportion to its value, to be ascertained as directed by law," &c. Id. 78.

*Per Curiam.* "The 13 sec. of art. 11, of the constitution, does not cover the case. That section provides for equality and uniformity of taxation upon property, but applies, in our judgment, only to that charge and imposition upon property which it is necessary to levy to raise funds *to defray the expenses of the government of the State, or of some county or town. We do not think it has any reference to special assessments by which individual parties are chiefly benefited in the increased value of their property, and in which the public is only to a limited extent interested.* For the expense of such improvement it is competent for the legislature to provide, either by general taxation upon the property of all the inhabitants of the county or State in which they are made, or upon property adjacent thereto and specially benefited thereby." Id. 84; *Woodbridge* v. *City of Detroit,* 8 Mich. 279 (1860).

The charter of Detroit empowered the common council to assess the cost of paving and grading streets upon the owners of lots or premises in front of, or adjacent to which the paving and grading were done.

The following were the constitutional provisions upon the subject of taxation:

Art. 14, sec. 11. "The legislature shall provide an uniform rule of taxation, except on property paying specific taxes; and taxes shall be levied on such property as shall be prescribed by law". Id. 281.

Idem., sec. 12. "All assessments hereinafter authorized shall be on property at its cash value."

Idem., sec. 12. Provides for an equalization of assessments upon all taxable property.

*Per Curiam.* "Taking these sections together, there seems to be no reason to doubt *the taxes here referred to are the ordinary taxes raised for State, county and municipal government. Taxes for purely local improvements, are not mentioned in the constitution, nor is it necessary they should be, to give the legislature power over them.* The power to impose and collect such taxes, like all other legislative powers not mentioned in the constitution, is plenary, and, in the exercise of it, is subject to legislative discretion only. As this description of taxes does not come within the sections of the constitution mentioned, valuation in the property taxed is not a necessary element in the apportionment of the tax."

Art. 123 of the constitution of Louisiana is as follows: "Taxation shall be equal and uniform throughout the State. All property on which taxes may be levied in this State shall be taxed in proportion to its value, to be ascertained by law. No one species of property shall be taxed higher than another species of property of equal value on which taxes shall be levied," &c.

It was provided by an act of the legislature in 1857, that, for the purpose of building or making and repairing all levees in a certain district, the commissioners of the district should have power to assess an annual tax on all the land situated in certain parishes, *specifically*, upon each and every acre.

*Held, per curiam. That the specific tax authorized by the act was not a tax within the meaning of Art. 123 of the constitution. Wallace* v. *Shelton,* 14 La. Ann. 498 (1850).

The Supreme Court of Missouri have decided, that the provision of the State constitution, which requires all property subject to taxation to be taxed in proportion to its value, *is applicable only to taxation in its usual, ordinary and received sense,* and that an act authorizing a company incorporated for the purpose reclaiming a certain district from inundation, by

ditching, &c., to levy a tax, not exceeding fifty cents per acre, upon the owners of all lands within the district, was not unconstitutional. *Egyptian Levee Co.* v. *Hardin,* 27 Mo. 495 (1858); *Inhabitants of Palmyra* v. *Horton,* 25 id. 593.

It has been decided in Ohio, that the exercise by the city of Cincinnati of the power of assessment upon real estate, by the front foot, to pay for improving an adjoining street, was not a violation of the State constitution of 1851, quoted *ante. Ernst* v. *Kunkle et al.,* 5 Ohio, 520; *Brewster* v. *The City of Syracuse,* 19 N. Y. 118; *Smith* v. *Corporation of Aberdeen,* 25 Miss. 462; *State* v. *Dean et al.,* 4 Zabr. 335; *Morse* v. *Stocker et al.,* 1 Allen, 150.

In the case last cited the court say : " The requirements that the expense of grading the way shall be assessed upon the owners of lots abutting upon it is obnoxious to criticism, *if we consider it an exercise of the power of taxation.* There may undoubtedly be taxes levied for public purposes of a local character which will not be adjudged unconstitutional, on account of inequality in their operation. *Where the assessment is made upon persons in respect to their ownership of a particular species of property, which receives a peculiar benefit from the expenditure of the tax, the law is valid, although it does not operate upon all persons and property in the community.*"

In *Weeks* v. *The City of Milwaukee et al.,* 10 Wis. 242, the Supreme Court sustained an assessment of precisely the same character as that made in this case, *upon the express ground, that the proceeding was an assessment, as contradistinguished from a tax,* and that assessments, *eo nomine,* were recognized in the State constitution. Id. 248, §§ 6–8, and 259–261.

We consider the foregoing direct authorities in favor of the constitutional power of the legislature to authorize assessments in the manner prescribed in chapter 7, section 21 of the revised charter.

The maxim, *expressio unius, exclusio alterius est,* is not applicable in the construction of the provisions of a State constitution upon the subject of taxation. *Williams* v. *Mayor, &c. of Detroit,* 2 Mich. 563.

Assessments upon the owners of property fronting or abutting upon streets in a city, to defray the expenses of constructing, repairing, and cleaning adjoining sidewalks, *without reference to the value of the lots assessed,* have been made, almost from time immemorial, by municipal governments in nearly all the States, and have never been regarded as infringements of constitutional restrictions upon the power of taxation.

*Vide City of Lowell* v. *Hadley,* 8 Metc. 180, (1844). This was assumpsit to recover from defendant the amount of an assessment, for the expense of a sidewalk constructed by the plaintiff in front of defendant's land in Lowell.

It was objected that the assessment was in violation of chapter 1, section 1, article 4 of the State constitution, which empowers the legislature "*to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of, and persons resident, and estates lying within the said Commonwealth.*" General Stat. Mass. 1860, p. 18.

*Per Curiam.* " The objection to the validity of the assessment, that it is not made upon the estates proportionally and equally, in reference to the value of the several lots to which the sidewalk is appurtenant, is attempted to be maintained upon principles of constitutional and statute law applicable more particularly to taxation for those objects for which taxes are assessed for general purposes of defraying State, county, and town expenditures, and which have no direct bearing on cases like the present, where the assessment is of a limited and local character, and is authorized by special statute provisions relating to the subject. This point was somewhat considered in Goddard's case, 16 Pick. 504, and, as it seems to us, furnishes no sufficient ground of defense."

Whether the assessment be made for the improvement of a sidewalk or of the main street, cannot, *cæteris paribus,* make any distinction in principle.

Assessments of special taxes upon the owners of lots fronting on a street, in proportion to the fronts of the lots, for the purpose of defraying the expense of constructing and keeping in

repair the adjoining sidewalks, have been sanctioned by a long course of legislation in this State.

The charter of the city of Alton, Laws 1833, p. 208, Sec. 6, contains this provision : " It shall be lawful for the board of trustees to levy and collect a *special tax* on the owners of lots in said street, or parts of street, *according to their respective fronts,* for the purpose of grading and paving the sidewalks in said street." The same provision occurs in the following charters." (Here the counsel specified the various charters.)

All the foregoing acts were passed prior to the adoption of our present constitution ; the assessments authorized by them are denominated in the various acts *special taxes ; they were authorized to be levied in proportion to the frontage upon the improvement,* without reference either to the depth or value of the lots assessed ; and yet it has never been supposed or contended that all these charters were in violation of sec. 30, art. 8 of the constitution of 1818, under which they were granted, and which provided, " That the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession."

State legislation upon this subject has been the same since the adoption of the new constitution as before, as will be seen by reference to the following acts : (Here the acts are specified.)

As evidence that the legislature have not deemed that there is any distinction in principle between special taxes or assessments upon lots fronting on a street, made in proportion to their respective fronts, for the purpose of constructing sidewalks, and assessments made upon the same property, and in the same manner, for the purpose of improving the main streets or roadways, the following acts are referred to. (Here the acts were cited.)

In the foregoing charters we have a very strong legislative exposition of the constitutional provisions relied on by defendants. It is apparent that no legislature which has assembled in this State for thirty years, has entertained the opinion that assessments for sidewalks, made in proportion to the frontage,

and without reference to the value of the property assessed, were in violation of the constitutional provision relating to taxation in proportion to value, and that no general assembly, since the adoption of the present constitution of the State, has deemed such assessments repugnant to any of *its* provisions.

It is also to be presumed that most, if not all of the foregoing charters were framed by lawyers, many of them, doubtless, eminent in their profession and familiar with the constitution of the State.

The practice of the judiciary, and acquiescence under it for a period of several years, may be resorted to for a practical exposition of the constitution. *Stewart* v. *Laird*, Cranch, 299, (1803.)

" Great weight has always been attached, and very rightly attached, to contemporaneous exposition. MARSHALL, Ch. J., *Cohens* v. *Virginia*, 6 Wheat. 264 (1821).

As to effect of contemporaneous legislative exposition, *vide Ogden* v. *Saunder*, 12 Wheat. 290 (1827); *Bruce* v. *Schuyler*, 4 Gilm. 262–264.

This is a very important case upon the doctrine of contemporaneous construction, and, as we think, is directly in point in this case.

The defendants in error insisted in the court below, that the provisions of chapter 7, section 31, *ante*, of the city charter, if not repugnant to the constitutional provisions on the subject of taxation, are an infringement of article 13, section 11 of the constitution, which provides that no man's property shall be taken or applied to public use without the consent of his representatives in the general assembly, nor without just compensation being made to him.

The following cases are referred to as authorities, that an assessment of this character, levied to raise *money* to defray the expense of a local improvement, is not the taking of *property* within the meaning of this section of the constitution. *People ex rel. Griffin* v. *The Mayor, &c., of Brooklyn*, 4 Comst. 419; *Burnett* v. *Mayor, &c., of Sacramento*, 12 Cal. 76; *Williams* v. *Mayor, &c., of Detroit*, 2 Mich. 565, 566; *Woolbridge* v. *Same*, 2

id. 282, 283; *Bonsall and Wife* v. *Lebanon,* 19 Ohio, 422; *Scovill* v. *City of Cleveland,* 1 Ohio, 135–137.

The evidence introduced in this case shows that the board of public works made a report to the common council of date August 10th, 1863, recommending to the council the improvement, to defray the expense of which this assessment was made, that the report was accompanied with an estimate of the expense of the improvement, and a proper ordinance or order directing the same. The report was signed: J. G. Gindele, Fred. Letz, Robert Law, F. C. Sherman, Board of Public Works of the city of Chicago.

This report was made in accordance with the provisions of chapter 7, section 3, revised charter.

The record of the proceedings of the common council shows that, at a regular meeting of the council, August 10, 1863, the foregoing report was presented to the council, and by them referred to the committee of streets and alleys of the south division of the city, and that, at a regular meeting of the council, held August 24, 1862, the committee, by one of its members, reported in favor of the passage of the ordinance which accompanied the report, and that the ordinance was passed unanimously, the vote being taken by ayes and noes.

Evidence was introduced upon the trial showing that the city clerk presented the ordinance to the mayor for his approval, on the 26th day of August, 1863, and that the mayor duly approved it.

The indorsements on the original report and ordinance entirely correspond with the record of the proceedings of the common council.

The defendants in error object that no notice was given by the board of public works, as contemplated by section 3, chapter 7 of the city charter; that the ordinance was passed without being petitioned for by the owners of a majority of the property to be assessed; and that none of the owners had notice, prior to the passage of the ordinance, of the intention of the board to recommend the improvement.

In reply to these objections, it is sufficient to say:

1. This section of the charter neither requires nor contemplates any notice in such case.

This court have expressly decided that, in proceedings for the condemnation of property, if the act authorizing the proceedings does not require notice, none need be given. *Johnson* v. *Joliet and Chicago Railroad Company*, 23 Ill. 202.

That was a much stronger case for the position of the defendants here, than the present, for in this case the defendants had three several opportunities to be heard after the passage of the ordinance; first, before the commissioners who made the assessment, ch. 7, sec. 23, Rev. Char.; second, before the common council on application for the confirmation of the assessment, id. sec. 24; third, before the court upon application for judgment, ch. 9, sec. 15, id.

2. The charter not only does not require that an improvement shall be petitioned for by the owners of a majority of the property to be assessed, but it plainly provides that the board of public works may recommend an improvement, whenever they think proper, "though no application may have been made therefor." Ch. 7, sec. 3, id.

Chap. 7, sec. 4, requires the board of public works to certify to the common council whether the improvement recommended by them is asked for by the petition of the owners of a majority of the land to be assessed, but this provision is evidently for the information of the council, and is not intended as a condition precedent to the ordering of the improvement; because the same section empowers the council, notwithstanding the improvement has not been so petitioned for, to order it by a vote of three-fourths of the aldermen present, to be entered by ayes and noes on the record.

In this case the board of public works certified that the improvement was not asked for by the petition of the owners of a majority of the property. The vote was therefore taken by ayes and noes, and was, as shown by the record, unanimous.

Objections 6, 7, 8 and 9 of defendants, record 37, 38, we think sufficiently answered by the record.

Objection 10, record p. 38, is wrong as to dates, but is sub-

stantially, that the report of the committee to whom was referred the recommendation of the board of public works, and the accompanying ordinance, was acted upon by the common council, and the ordinance passed the same day the committee reported, and without deferring the report till the next regular meeting of the council.

There is nothing in the charter which gives the least force to this objection. The only provision in the charter relating to such postponement of the report of a committee is as follows:

"Any report of a committee of the council may be deferred to the next regular meeting of the same, and the publication of said report in the corporation newspaper required by request of any two aldermen present." Chap. 4, sec. 4.

There was no request that the report should be deferred. The record shows, as before stated, that the ordinance was unanimously passed.

The evidence shows that the commissioners were sworn before proceeding to make the assessment, faithfully to execute their duty according to the best of their ability.

This is the oath required by the charter, chap. 7, sections 6 and 23, and is a complete answer to the 11th objection of the defendants, viz., that the commissioners were not sworn.

The commissioners, before proceeding to make the assessment, gave six days notice, by publication in the corporation newspaper, of the time and place of their meeting for the purpose of making said assessment, specifying in the notice what the assessment was to be for, and the amount to be assessed, in accordance with sec. 23, chap. 7 of the charter.

This notice was dated September 26, 1863, and was signed, J. G. Gindele, Fred. Letz, O. J. Rose, commissioners of the board of public works.

Appended to this notice and introduced in evidence, is a certificate of Storey & Worden, the publishers of the Chicago Times, the corporation newspaper, that the notice was published in the Times six days consecutively, commencing on the 26th day of September, 1863.

The time of meeting mentioned in the notice, was October 3, 1863.

It was admitted on the trial that the Chicago Times was the corporation newspaper of the city of Chicago while said assessment proceedings were pending, that Storey & Worden were the publishers of said paper, and that the notices appended to the assessment roll introduced in evidence, were published in said newspaper as stated in the certificates of publication attached to the roll.

The assessment roll is contained in the record. The roll contains, first, a list showing the names of persons to whom lands were assessed, the blocks, lots, sub-lots, pieces or parcels of land assessed, and the amounts assessed against each respectively.

Then follows a certificate of the commissioners, that they had completed the assessment roll; that before proceeding to make the assessment, they were duly qualified; that they published a notice of the time and place of their meeting to make the assessment, &c.; that they were present at said time and place, and did then *and do hereby assess* the respective amounts set opposite to each separate block, lot, sub-lot, piece or parcel of land in the foregoing assessment roll mentioned, in their appropriate columns, as the amount directed by the common council to be assessed on the real estate fronting or abutting on the contemplated improvement.

The commissioners further certify in substance that the assessment roll embraces all the property fronting or abutting on the improvement, and that the assessment was made in such manner, as nearly as might be, that each piece of property on either side of the street to be improved, should sustain the expense of the improvement on that half of the street adjacent to or in front of it.

This certificate is dated October 3d, 1864, the same day that the commissioners had specified in the notice aforesaid as the day on which they would meet to make the assessment, and is signed, J. G. Gindele, Fred. Letz, O. J. Rose, commissioners of the board of public works.

Appended to the assessment roll introduced in evidence and referred to in the foregoing certificate, are copies of the notices given by the commissioners, attached to which are the publishers' certificates of publication.

The commissioners filed the assessment roll completed and signed as aforesaid, in the office of the city clerk, October 10, 1863.

October 11, 1863, the commissioners published, in the corporation newspaper, a notice that the board of public works had completed the assessment roll, specifying what it was for, and that they had filed the roll in the office of the city clerk, and that the board of public works would apply to the common council, at its next regular meeting, October 19, 1863, at 7½ o'clock P. M., for a confirmation of said assessment, &c.

This notice was signed, J. G. Gindele, Fred. Letz, O. J. Rose, commissioners of the board of public works.

Appended to said notice is the publishers' certificate that the notice was published in the Chicago Times six days consecutively, commencing with Oct. 11, 1863.

Appended to the assessment roll was an application for confirmation, dated October 19, 1863, addressed to the common council, and signed by the commissioners as the notice last aforesaid.

Also a form of an order of confirmation.

The record of the proceedings of the common council introduced in evidence, shews that at a regular meeting of the common council, October 19, 1863, the board of public works returned and asked for the confirmation of the said assessment roll, and that it was confirmed by the passage of the aforesaid appended order of confirmation.

Evidence was introduced showing that the order of confirmation appended to the roll was presented by the city clerk to the mayor, for his approval, on the 21st of October, 1863, and approved by the mayor on said day.

Objections 12 and 13, are to the notice given by the commissioners of the time and place of their meeting to make the assessment.

The notice was given under sec. 23, chap. 7 of the charter, and it is difficult to perceive how it could more accurately conform to this section.

It specifies the improvement to be made, recites the order of the common council directing it, mentions the amount to be assessed, and the property upon which it is to be assessed, and designates the day and hour when, and the room where the commissioners will meet to make the assessment. It is signed by the commissioners of the board of public works, who, by the charter, are commissioners to make such assessments, (chap. 6, sec. 14, rev. charter), and was published, as the record shows, for six consecutive days prior to the time of meeting.

The 13th and 14th objections are that the commissioners, in making the assessment did not estimate damages as well as benefits to the property assessed, and did not in the assessment roll strike a balance between benefits and damages, and carry forward the difference to another column.

In answer to these objections it is sufficient to say that the provisions of the city charter, which require an assessment of damages as well as benefits, &c., relate exclusively to condemnation proceedings for the opening, widening and extension of streets, &c. Chap. 7 rev. charter, §§ 5, 6, 7, 8.

Idem, sec. 21, under and by virtue of which this assessment was made, neither requires nor contemplates an estimation of damages; on the contrary such estimation would be inconsistent with the provisions of this section.

Idem, sec. 24, which provides that upon application by the commissioners for confirmation of an assessment, "all parties in interest shall have the like rights, and the common council shall perform the like duties, and have like powers in relation to such assessments as are herein given in relation to assessments for the condemnation of real estate," is relied on to sustain these objections.

It is apparent that the rights of "parties in interest" intended to be secured by this section are the right to file objections to the assessment, and the right to have such objections heard by

the common council, as prescribed in sec. 13, chap. 7, of the Rev. charter.

The case of *Wright et al.* v. *The City of Chicago*, decided at the April term, 1863, of this court, is also relied on by defendants. This case is not in point. It involved a construction of the revised charter of 1861, which, upon this subject, is, in its provisions, essentially different from the charter of 1863, under which this assessment was made.

Objection 16 of defendants, is that no sufficient assessment roll was filed in the office of the city clerk, and no duplicate thereof in the office of the board of public works, and that the roll was not signed by the commissioners.

A certified copy of the assessment roll was introduced in evidence, and appears upon the record. It was signed by the commissioners of the board of public works, the mayor excepted, as provided by the charter.

The certificate of the clerk, whose duty it was to make such certificate, shows that the roll was filed in his office Oct. 10, 1863.

But the defendants object that the certificate at the end of the list of names, property and amounts in the assessment roll is no part of the roll itself, and that the signing of this certificate by the commissioners cannot be deemed or taken to be, and is not, a signing of the roll.

1. The certificate at the end of the assessment roll is a necessary part of the roll itself, without it the roll would be incomplete, there would be nothing to designate or explain the meaning of the respective amounts in the figure columns of the preceding list, or to show that the assessment was made in conformity with the charter, or how it was made.

2. Even though the certificate were necessary, and mere surplusage, the signing was sufficient.

Under a statute requiring assessors to "*make perfect lists under their hands*," it has been decided that "all that can be reasonably required is to accomplish the object designed by the statute, which is that the lists should bear upon them the official

sanction of a majority of the assessors, evidenced by their signatures. *If a majority sign the list in such a manner as to show that the intention was thereby to give their official sanction, that may be sufficient on whatever part of the list it be made."* 3 Shep. (15 Me.), 31.

No doubt can be entertained of the intention of the commissioners in this case; it is sufficiently evidenced by the language of the certificate. *Law* v. *Galena & Chicago Union Railroad Company*, 18 Ill. 324; *Kellar* v. *Savage*, 20 Me. 199; *Bangor* v. *Lancey*, 21 id. 473; *Colby* v. *Russell et al.* 3 id. 210, (3 Greenl.), relied on by defendants, is overruled by 3 Shepley, *supra*, and other cases. *Vide* note *a* to 3 Me. 210; *Sibley* v. *Smith et al.* 2 Mich., 486, also relied on by defendants, is not in point. The Michigan statute required not only an assessment roll, but also a certificate, and that both should be signed. The assessors signed the certificate only, and this was held no signing of the roll. Id. 498. In the last case it could not be contended with any degree of plausibility, that the signing of a certificate, the form of which was prescribed by the statute, was intended by the assessors as a signing of the assessment roll.

As to the objection, that no duplicate of the assessment roll was filed in the office of the board of public works:

1. *The charter does not require that in assessment proceedings for improvements of the character involved in this suit, a duplicate of the assessment roll shall be so filed.*

Sec. 13, chap. 7, rev. charter, *which has relation solely to assessments for improvements requiring the condemnation of real estate, provides:*

"When completed, the commissioners shall sign and file the assessment roll in the office of the city clerk, and a duplicate thereof in the office of the board of public works," and provides, further, for notice that the roll has been filed in the clerk's office, and that the commissioners will apply to the council for confirmation, &c.

Sec. 24, chap. 7, rev. charter, which regulates the duties of the commissioners upon the completion of assessments for the

improvement of streets, and *not requiring the condemnation of land*, provides:

"When the commissioners shall have completed their assessment, they shall sign and return the same in like manner, and give like notice of the applications to the common council for confirmation, as herein required in relation to assessments for the condemnation of real estate."

What are the commissioners required to sign and return by this section? Clearly the original assessment roll. The word duplicate is not mentioned in the section, nor does it contemplate the filing of a duplicate. On the contrary, the fact that a duplicate is provided for in the 13th section, and such provision omitted in the 24th, is evidence that it was not the intention of the latter section that any duplicate should be filed.

2. If it was intended by the 24th section that a duplicate roll should be filed as prescribed in the 13th section, *the provision is merely directory.*

This is apparent upon the face of the statute.

The notice of application for confirmation is required to state only that the assessment roll has been filed in the office of the city clerk, and that, at the next regular meeting of the council, the commissioners will apply for a confirmation of the assessment. Sec. 13, chap. 7, rev. charter.

In the notice there is no mention whatever of the filing of a duplicate roll in the office of the board of public works.

Why is this? Because it is in the office of the city clerk that parties in interest, and desiring to object, are required to file their objections. In the clerk's office, therefore, the roll is filed for their inspection and information; by such inspection they have full opportunity to protect their rights, and cannot by possibility be prejudiced by an omission to file a duplicate roll in the office of the board of public works. Id. sec. 13.

On this point the following are cited: *Munson* v. *Minor*, 22 Ill. 595; *Hill et al.* v. *Figley*, 25 id. 156.

The revised charter, chap. 9, sec. 30, contains a provision almost identical with sec. 44 of the revenue act of 1853.

Scate's Comp. 1042, cited in the cases last referred to.

Defendants further object to the notice given by the commissioners of their intention to apply to the common council for a confirmation of the assessment, upon the ground that it was legally insufficient.

The objection to the notice, more definitely stated, is that it states that the *board of public works* have completed the assessment, &c., and that the *board of public works* will apply to the common council, &c., for confirmation; whereas, as insisted by the defendants, the notice should have stated that the *commissioners of the board of public works* had completed the assessment, and that the *commissioners of the board of public works* would apply to the common council for confirmation, &c.

Sec. 1, chap. 6, rev. charter, establishes an executive department of the municipal government of the city, to be known as the "board of public works," to consist of the mayor, who shall be a member of the board, *ex officio*, and three commissioners.

Sec. 14, id., provides, "The commissioners of the board of public works, with the exception of the mayor, shall, in all cases, except as in this act otherwise provided, act as commissioners to make special assessments, whenever the same may be ordered."

The provision referred to in the foregoing section is contained in sec. 37, chap. 7, rev. charter.

It is upon sec. 14, *supra*, that defendants base their objection to the notice.

1. The notice is properly signed by the three commissioners who, together with the mayor, constitute the board of public works, and they sign as "*commissioners of the board of public works.*"

2. The notice, in containing the statement that the board of public works have made the assessment and will apply for confirmation, and in being signed by the commissioners of the Board of public works, is as certain and definite as is the charter itself.

In sec. 35, chap. 7, of the charter, we find this language: "If, in any case the first assessment prove insufficient, the *board of public works* shall make a second in the same manner," &c.

Now *technically* considered, the board of public works never make an assessment; the commissioners of the board of public works alone can act in making assessments; yet the legislature evidently thought the language just quoted, sufficiently accurate to convey the intention.

It is sought, however, by the objection under consideration, *to require of the commissioners language more technically accurate, than that used in the organic law under which they act.*

3. The notice is substantially correct, and not calculated to mislead or deceive any one, and, if at all objectionable, is only so upon the ground of mere informality, which is cured by the following provision in the revised charter.

Chap. 9, sec. 30. "No assessment of property, or charge for taxes or assessments thereon, shall be considered illegal on account of any irregularity or informality in the tax list or assessment rolls, or on account of the assessment rolls or tax list not being made, completed, or returned within the time required by law, or on account of the property having been charged or listed in the assessment or tax list without name, or in any other name than that of the rightful owner; and no error or informality in the proceedings of any of the officers entrusted with the levying and collection of taxes or special assessments, *not affecting the substantial justice of the tax or assessment itself*, shall vitiate or in any way affect the tax or assessment."

As to the effect of this section, see *Munson* v. *Minor*, 22 Ill. 595; *Hill et al.* v. *Figley*, 25 id. 156.

This court decided in the last case cited, that an omission to annex to the figures in an assessment roll, some word or character to designate the sums which they were intended to represent, was cured by the 44th sec. of the revenue act of 1853, which section was certainly not more comprehensive than sec. 30 of the revised charter, *ante.*

15 — 34TH ILL.

It is noticeable that in a prior decision in the case of *Gibson et al.* v. *The City of Chicago,* 22 Ill. 572, the court decided that such an omission was a substantial defect in the assessment roll.

Objections 18 and 19 are general, and we think sufficiently answered by the record.

Objection 20 is immaterial and unsupported by evidence.

Objections 21 and 22, p. 41 of record are, that some seven lots fronting and abutting upon the contemplated improvement were not assessed, and that two lots not fronting upon the said improvement, but upon Michigan avenue, were assessed.

It was admitted on the trial, that by a mistake of the commissioners, arising from an erroneous description of the property on the map, seven sub-lots, and the one-third of another lot, the premises all lying contiguous to each other, and fronting upon the proposed improvement, were not assessed; and that, in consequence of the same erroneous description on the map, the commissioners, by a like mistake, assessed seven lots and the one-third of another lot, not fronting upon the proposed improvement, but upon Michigan avenue. By consent of plaintiff, judgment was refused against the lots erroneously assessed.

An omission by mistake to assess some of the property liable to be assessed, does not render void the whole assessment. *Merritt et al.* v. *Farris et al.,* 22 Ill. 303; *Weeks* v. *City of Milwaukee,* 10 Wis. 263–269, where the question is fully discussed; *Insurance Co.* v. *Yard,* 17 Penn. 332, 339; *Williams* v. *School District,* 21 Pick. 81; *Watson* v. *Inhabitants of Princeton,* 4 Metc. 601.

The 23d objection, that the proceedings of the common council, and of the board of public works, are not sufficiently definite as to the streets to be improved, and the *termini* of the improvement is unsupported by the evidence.

The ordinance names Wabash avenue as the street to be improved, one terminus of the improvement to be Randolph street, the other Fourteenth street produced eastwardly. The map of the city shows that Randolph and Fourteenth streets run at right angles to Wabash avenue.

The description of the proposed improvement given in the notices by the commissioners corresponds exactly with the description in the ordinance.

Objection 24 is the same as the objection that no duplicate roll was filed, answered — *ante.*

Objection 25, that the common council passed the order of confirmation without proof of the publication of the notice required to be given by the commissioners is not well taken.

It sufficiently appears by the certificates of the publishers that the notice was published, as required by the charter, and these certificates were, together with the notices, appended to the roll when it was filed in the office of the clerk, and were presented with the roll to the common council, when confirmation was asked.

The order of confirmation itself shows that the council were satisfied on this point, and the charter does not prescribe or require any particular kind or degree of proof.

Objections 26 and 27 are the same in substance, viz., that the corner lots abutting on the improvement were assessed higher than adjoining inside lots of the same size.

It was admitted upon the trial that the corner lots were assessed for the expense of ·the curbing at the adjacent corners, in addition to the expense of the improvement of the half of the street immediately in front of said lots.

That part of the curbing for the expense of which the corner lots were assessed, is called the return, and its dimensions are determined by the widths, at the corner, of the intersecting sidewalks. The diagram sufficiently indicates this part of the curbing.

In answer to this objection :

1. The curbing at the corner, or the return, is an essential part of the improvement, without it the filling at the corner cannot be kept in its place.

2. It benefits the corner lot only.

3. The rev. char. chap. 7, sec. 39, provides that tne cost and expense of certain improvements therein enumerated, *excepting sidewalks and area or street walls*, shall be chargeable

upon and paid out of the general fund, or other appropriate fund of said city, *not raised by special assessment.*

Street walls, then, being excepted from improvements, the expense of which is to be paid out of some fund *not raised by special assessment,* it necessarily follows that the expense of street walls must be paid *out of a fund raised by special assessment.* The section will not admit of any other reasonable construction.

The next consideration is, upon what property shall the expense of that part of the street wall at the corner, and not in front of any lot, the curbing at the corner be assessed?

Sec. 21, chap. 7, requires the assessment to be so made, as nearly as may be, that each separate piece of land "shall sustain the cost and expense of making or completing the improvement upon that half of the street directly in front of *or adjacent to the same.*"

The expense of constructing the return walls, the curbing at the corners, cannot, under the provisions of this section, be assessed upon inside lots; because such curbing is neither *in front of nor adjacent to these lots.* But this part of the curbing is *adjacent to* the corner lots, and benefits them chiefly; they are the only lots to which it is adjacent; the expense of constructing it must, by the provisions of the charter, be raised by *special assessment;* it would seem to follow necessarily that this expense must be assessed upon the corner lots.

Unless this construction prevail this essential part of the improvement cannot be made. The charter excludes the idea that it can be paid for out of any fund not raised by special assessment, and unless the expense of it can be assessed upon the adjacent corner lots, it cannot, consistently with the provisions of section 21 (*supra*), be assessed at all.

There is no evidence in the record that any of the objectors are the owners of corner lots.

Objections 28 is, that there was no assessment made against the city, for the intersections and crossings of streets and alleys, &c., on the line of the improvement.

Sec. 39, chap. 7, rev. char. provides, that the cost and

expense of improvements at the intersections of streets or alleys, or of streets and alleys, shall be paid for out of the general, or other appropriate fund of said city *not raised by special assessment.*

The estimate of the expense of the improvement reported by the board of public works to the common council, shows that the cost of the intersections was deducted from the total expense, leaving the balance only to be assessed.

The collector's notices required to be given by chap. 9, sections 9 and 12, rev. char. are contained in the record, and are sufficient in all respects.

Appended to them are certificates of publication.

Mr. A. W. ARRINGTON, for the defendants in error, submitted the following brief:

The points discussed in the present brief, come under two general divisions : The unconstitutionality of the law; and the want of jurisdiction in the common council.

Of these in their order.

The unconstitutionality of the law

The law, under which the city claims the right to levy this imposition, authorizes the taking of private property for the improvement of a public thoroughfare. Yet it provides no compensation; makes no reference to any benefits; does not even deign to disguise the naked burden which it casts upon the citizen. See city charter, p. 76.

In countries where the will of the reigning sovereignty, whether of the one or the many, is the sole rule of civil conduct, such an exercise of arbitrary power, however onerous and unjust, would be irremediable by the courts. But before this tribunal, we have the privilege of invoking the 8th section of our bill of rights, a provision transplanted from the great charter, and placed under the guard of a state judiciary : " No freeman shall be imprisoned, &c., or in any manner deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

It is conceded, that this inestimable guarantee does not pro-

hibit the taking of property by taxation, or by the right of eminent domain; nor does it prohibit restraints in the use of property by virtue. of the police power. Sedgwick on Stat. & Cons. Law, 505, *et seq.*

But with these three exceptions, according to all the authorities, the State ·is· absolutely excluded from the power of interference with private property. And since there can be no pretense that the exaction of which we now complain, falls within the category of a police regulation, it must be sustained, if at all, either as a tax, or as an exercise of eminent domain.

We may therefore set out with the axiom of American constitutional law : "That private property can only be taken for public use, in one or two ways ; by taxation or by the prerogative of eminent domain." *People* v. *Mayor of Brooklyn,* 6 Barb. 209 ; *S. C.,* 4 Comst. 443.

And it will now be shown, that the present imposition cannot be upheld under either power.

*First.* Let us suppose that this imposition is a tax. Nor is this supposition gratuitous. This is a tax in any sense of the term. The following· are among the many definitions of the word :

"A tax is a portion of the property of individuals which is taken from them by government, and disposed of by it." Ency. Brittan., xxi, p. 37.

*Taxa, exactio, impositio, certum pretium, seu certa pecuniæ quantitas, per vim exacta.* Ducange.

"Literally, or according to its derivation, an imposition laid by government upon individuals, in a certain order and proportion." Burrill's Law Dic. "Tax."

"The word *taxes* means burdens, charges or impositions, put or set upon persons or property for public uses." *Matter of the Mayor, &c.,* 11 Johns. 80. · ·

The fundamental idea indicated by the term "tax" is that of a *burden* imposed as such, and without immediate reference to the individual benefit of the persons upon whom it is laid.

"Whatever be the denomination it bears, it is virtually a burden imposed upon individuals by the ruling power." Say's Polit. Econ. 446.

Demonstrably, then, this impost is a tax. Therefore, it is prohibited by the constitution, art. 9, sec. 5: "The corporate authorities of counties, townships, school districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

Dilemma. If this imposition be a tax, it is either for "corporate purposes," or it is not.

But if it be for "corporate purposes," it violates the plain letter of the constitution: because it is not "uniform" in respect to persons and property within the jurisdiction of the body imposing the tax.

If, on the other hand, the tax is not for "corporate purposes," it is clearly unconstitutional: because "corporate authorities" can only be vested with power to assess and collect taxes "for corporate purposes." *Johnson* v. *Stark County*, 24 Ill. 87–89.

*Ergo;* upon either alternative, the tax must be pronounced unconstitutional. 3 Ohio, 15; 1 id. 135; 10 Wis.

*Second.* Let us suppose this imposition to be an exercise of eminent domain.

Then it is opposed to the constitution, art. 13, sec. 11: "Nor shall any man's property be taken, or applied to public use, without the consent of his representatives in the general assembly, nor without just compensation being made to him."

The rule is: That the method of ascertaining the compensation must be provided before the property can be taken.

This results from the language of the constitution: "The property shall not be taken without just compensation."

The taking and the compensation are logical correlatives. And, therefore, the one cannot exist without the other. The condition and the conditioned must stand or fall together.

To the same effect are all the cases: Sedg. Stat. & Const. Law, 526; 2 Kent's Com. 340, n.; *Bloodgood* v. *Mohawk, &c., R. R.* 18 Wend. 9; *Gardner* v. *Newburg,* 2 Johns. Ch. 162; *Cushman* v. *Smith,* 34 Me. 247; *Henderson* v. *Mayor, &c.,* 5 Miller's La. 416.

But no compensation has been provided by the law in this instance.

*Ergo;* as an exercise of eminent domain, the law is unconstitutional.

Hence, the general conclusion of rigorous logic is, that this impost must be declared void under the constitution, whether considered as a tax, or as an attempt to exercise eminent domain.

*Third.* Let us next see how the case stands in the light of your past judicial decisions.

Under the old constitution, the case of *Shaw* v. *Dennis,* 5 Gilm. 416, decided: "That the legislature has the right to impose a local tax upon a town or city, a precinct or county, for some local improvement." But that "in doing this, it cannot say that one man shall pay all and others none, or that one shall pay one dollar and another ten; for the tax must still be uniform, and upon the value of the property which each one has, so that the burden shall press alike upon the whole community."

The first case of "special assessments" which I have found in the Illinois Reports, is that of *Canal Trustees* v. *Chicago,* 12 Ill. 403.

It was the case of widening an alley, and the damages and expenses of the improvement were "assessed and apportioned on real estate deemed benefited thereby, apportioning injury and benefits," &c.

The court decided that the assessment then in question "had none of the distinctive features of a tax," predicating their opinion upon the cases of the Mayor, 11 Johns. 80, and *Bleecker* v. *Ballou,* 3 Wend. 263, and laying down, as the cardinal premise of their logic, the following proposition: "The assessment is precisely in the ratio of the advantages accruing to the

property in consequence of the improvement. It is but an equivalent, or compensation for the increased value the property derives from the opening of the street." Id. 406.

Here, the legislative power to direct special assessments is evidently located under the head of eminent domain. Assessments are made to stand on the ground of a "just compensation," the compensation being provided in the act authorizing them.

All the subsequent cases in Illinois have maintained the integrity of this equitable doctrine. Instance the following:

*Higgins* v. *Chicago*, 18 Ill. 281, where "the mode of "apportioning the burden" of local improvements in the ratio of "benefits" is pronounced "very just and reasonable."

*Chicago* v. *Colby*, 20 Ill. 615, 618, where "an assessment in proportion to benefits" was sustained on the authority of the two preceding cases.

*McBride* v. *Chicago*, 22 Ill. 576, 577, where a similar assessment was upheld upon the same grounds.

*Peoria* v. *Kidder*, 26 Ill. 357, is to the same effect, and still stronger to show that "special assessments" belong to the category of eminent domain.

In short, there has never been a case in Illinois, nor has any dictum ever fallen from the lips of an Illinois judge, giving the faintest color to the idea that a "special assessment" can be laid in any other mode than in the ratio of benefits; or, that anything is, or can be a special assessment, unless it professes to formulate an equation between benefit and burden.

In the court below, *Town of Pleasant* v. *Kost*, 29 Ill. 494, 495, was cited as if in favor of the city. It is, however, directly the reverse.

In that case the court decided that the assessment of labor, for the repair of roads, was not a tax. But even there the court held that "the number of days levied, and the sum which might be received by commutation, must be uniform within the limits of the body imposing the same."

The general result of the Illinois cases is briefly this:

1. Special assessments are in the ratio of benefits.

2. Such assessments are not taxes.

3. Such assessments are constitutional.

4. Such assessments must have the same uniformity and equality as taxes.

If therefore, we are to look only to the Illinois decisions, the ground occupied by the defendants is unassailable.

But the counsel for the city make their appeal from the *lex loci* to the adjudications of foreign forums, and out of courtesy, at least, we must meet them on that field of debate also.

*Fourth.* The decisions of other States. In treating this branch of the discussion, it is necessary to bear in mind that, in a majority of the States, the power of taxation has no limits. It is limited in the following States only : Tennessee, Louisiana, Arkansas, Texas, Missouri, California, Massachusetts, Michigan, Wisconsin, Ohio, and Illinois — eleven States. Sedgwick, 555.

But in no other State Constitution is there the same absolute limitation in respect to the taxing power which may be vested in " corporate authorities."

I hasten to notice the principal foreign cases that have been adduced in support of the other side, and in the order of their supposed relative importance.

*People* v. *The Mayor*, 4 Comst., 419. This case decides three things :

1. That an assessment for a local improvement, made " in proportion to benefits," is constitutional.

2. That such an assessment is an exercise of the taxing power.

3. That the taxing power is unlimited in the State of New York.

The bare statement of these points shows that the case can furnish no aid in the solution of a similar question arising under the constitution of Illinois.

But as the whole opinion in 4 Comstock assumes the *ex cathedra* style, and Mr. Justice RUGGLES unmercifully criticises the supposed mistakes of other judges, it may not be amiss to indicate a few of his own errors.

I. The learned judge asserts: "That by eminent domain and taxation, the State *resumes* part of the property of individuals"—p. 422.

How can the State *resume* property which it did not create, and which it never possessed? The State is not a producer. It only consumes.

II. "That the taxpayer receives compensation in the protection afforded by government," in return for the money taken, is another favorite axiom of Justice RUGGLES—p. 422.

This is the *quid pro quo* principle, now rejected by all advanced writers on political economy. The true principle of taxation is necessity, and the rule, "equality of sacrifice." 2 Mills' Polit. Econ., pp. 370–372.

But these are mere errors in general theory. We proceed to the flagrant fallacies in the judicial logic.

III. On the 425th page, the judge concedes, "that the paving of Flushing avenue was a *public* work, the expenses of which might rightfully have been raised by general taxation." And then he immediately changes front, on the same page, and proclaims the injustice of "general taxation" for such "a special local object."

But how, and in what mystic sense, "a public work" and "a special local object" happen to be synonyms in the language, he does not trouble himself to explain.

IV. The judge affirms the justice of the assessment in question, as a pure equation of "burden and benefit"—p. 425.

This is astonishing. Can that be a burden which bestows an equivalent benefit? Can that be a tax which takes a hundred dollars out of the left pocket, and, at the same time, puts another hundred dollars in the right? I had always supposed that in algebra *plus* and *minus* quantities cancel each other, without affecting the equipoise of values.

V. The fundadamental premise of the reasoning in 4 Comstock, is, that "special assessments" find their justification in the taxing power; and yet Justice RUGGLES hesitates to call them taxes—p. 432.

The learned counsel for the city, in the present case, have

adopted the idea; boldly asserting such assessments to fall under the taxing power, and yet denying them to be taxes.

Is not this a virtual contradiction in terms? Is not the exercise of any power, an act of that power: for example, of the war power, an act of war; of the legislative power, an act of legislation; of human reason, a rational act? Though I must confess that such logic as I am now combating does not seem entitled to the denomination of "rational."

VI. With a contemptuous air of authority, *inter pueros senex*, Justice RUGGLES sets aside the earlier New York cases, which the Illinois courts, in their simplicity, have followed. He pronounces them all *dicta!*

Suppose they were so. Yet the *dicta* of such men as KENT, and SPENCER, and VAN NESS, and YATES, and WALWORTH, may be of more weight than the most elaborate and pertinent adjudications of less experienced jurists.

However, the cases referred to are not *dicta*, as the briefest examination will show.

In the case of the Mayor, 11 Johns., p. 80, certain churches, exempted by law from taxation, resisted, for that reason, an assessment in the ratio of benefits.

The logic of the churches was: We are not subject to taxation; but a special assessment is a tax; *ergo;* we are not subject to special assessment.

The only way to overthrow this conclusion was by attacking the minor premise; since the major was a statute law.

The court disproved the minor by this short syllogism: Taxes are burdens: but a special assessment is not a burden; *ergo;* it is not a tax.

Is such reasoning a mere *dictum?*

In the case of *Livingston* v. *The Mayor*, 8 Wend. 86, to which Justice RUGGLES refers, it was decided: "That the benefit accruing to a person whose land is taken for a street, by the increased value of his adjacent property, may be set off against the damage sustained by the loss of the property so taken."

The court deducted this inference, in part, from the analogy of "special assessments" for local improvements. Their logic

ran thus: "If money taken for the improvement of a street may be compensated in benefits to adjacent land; why may not land, taken for a street, be compensated in the same way, by like benefits to land?" 8 Wend. 101.

And I defy any stretch of legal ingenuity to answer that question by the statement of any difference. For all concede the taking of land to be an exercise of eminent domain. But that may be compensated by benefits to adjacent land. Therefore, the money taken for street improvements may be so compensated. And therefore, again, the latter case, to wit, that a special assessment comes under the head of eminent domain, as well as the former case.

Yet Justice RUGGLES denies that money can ever be taken by eminent domain. 4 Comst. 424.

Let these instances suffice as to the method of treatment adopted by Justice RUGGLES in dealing, as well with the cases he quotes, as with those he criticises.

VII. But the great fault, in the opinion of Justice RUGGLES, consists in the fact that it is a continuous *dictum*, or rather a long and patient series of *dicta*.

For the assessment in that case was apportioned to benefits. 4 Comst. 421.

And the learned judge himself actually sustains the assessment on that very ground. Id. 431, 438.

Why not, then, let the matter stand where it had stood, as he says, for a century and a half? Why forsake the *via trita*, *via tuta*, to wander in the wilds of novel theory, searching for the *via deserta et interclusa ?*

*Hill* v. *Rigdon*, 5 Ohio, 243, is another case relied upon by our adversaries.

In that case an impost, similar to the present, was sustained.

One constitutional provision there referred to was to the effect: "That laws shall be passed taxing, by a uniform rule, all property, &c., according to its value," &c., p. 246.

It was held, however, that another constitutional provision, which required the general assembly to restrict the power of taxation, assessment, &c., of cities and incorporated villages,

controlled the rule of uniformity so as to legitimate the assessment in question.

The court, however, were of the opinion, that had it not been for the latter provision, the assessment would have been unconstitutional. Id. p. 246.

RANNEY, C. J., had "doubts not entirely removed," (p. 244) and BARTLEY, J., dissented.

The decision was probably correct; because, the legislature, having authority to restrict the power of taxation of cities, &c., must necessarily determine the extent and limits of the restrictions.

The court held, too, that the assessment was a tax.

That case, then, is an authority in our favor, rather than against us.

*Weeks* v. *Milwaukie*, 10 Wis. 259, was a mere repetition of nearly the same facts, constitutional provisions, and judgments, as in the Ohio case.

It was strongly decided, in *Weeks* v. *Milwaukee*, that an assessment compelling every owner to pay for the improvement in front of his lot, without reference to inequalities in the value of the adjacent property, "was destructive of uniformity." Id. 258. And, therefore, that the impost would have been unlawful, but for the constitutional provision directing the legislature "to restrict the power of taxation, assessment, &c., of cities and incorporated villages."

*Burnet* v. *Sacramento*, 12 Cal. 76, was a case where the apportionment was according to the assessed cash value of the adjacent property. And it was decided that the provision in the constitution — "Taxation shall be equal and uniform throughout the State" — "did not refer to special assessments, by which individuals are chiefly benefited, in the increased value of their property." Id. 83.

It was also held by the court, following the case in 4 Comstock, "that special assessments come under the taxing power." Id.

Of all the other cases cited adversely we may say, *et sic de similibus.* They prove nothing; at least, nothing to the purpose.

One may well ask, with some surprise, what can be the object in adducing such cases?

For either this court must adopt their doctrines, or not.

And if they are not to be adopted, for what reason are they quoted?

But if you adopt the premises set forth in those cases, you must follow them out logically to their natural consequences, but in combination with the new premise of your own constitution.

Well, those cases all affirm special assessments to be substantially taxes.

But your own constitution declares, "that taxes shall be uniform throughout the jurisdiction of the body imposing the same."

*Ergo.* If those foreign cases are right, and special assessments are taxes, this impost is unconstitutional, from its want of uniformity.

*Fifth.* Arguments of the other side:

I. The central fallacy of our opponents is the question-begging name, "special assessments."

They prove, from the Illinois reports, that special assessments are constitutional, and then call this a "special assessment."

Can you legitimate an unjust thing by giving it an honest name? Can you compel adjacent owners to pave a street with gold under the title of a special assessment?

The fundamental question is, what is the essential and characteristic attribute of a special assessment? And all the Illinois cases answer, "an apportionment of benefits to the burden."

But there is no such apportionment here.

*Ergo.* Unless logic itself is a lie, this is not a special assessment.

This impost lacks the specific difference which contradistinguishes a special assessment from a tax.

*Ergo.* It is a tax.

II. The extraordinary position has been taken, "that the

legislature has, by the charter, *per se*, fixed the ratio of 'bene-fits,' by determining it to be in proportion to the linear front feet of the adjacent property!"

To this we make answer:

1. The charter does not pretend to apportion any benefits. And therefore you will not reverse the maxim, *quod voluit non dixit*, into the enormous absurdity, *nihil dixit ergo voluit.* Courts are not creators to make worlds of meaning out of sheer vacuity.

2. The charter does not specify the kind of pavement; and different kinds of pavement have very different degrees of absolute value, as compared with relative cost; while some kinds of pavement would entail positive injury upon the adjacent owners, instead of benefit. Hence the ratio would not be that of justice. It would not be a ratio at all, but the reign of chance.

3. This court have decided, "that they can not know whether the Nicholson pavement is a benefit or a damage." *Chicago* v. *Wright et al.*

4. The determination of what constitutes a "benefit," and its valuation, are judicial acts, which do not appertain to the legislative function. Sedg. 169, 174, 175, 177.

What! will any lawyer say, that the legislature can fix, by statute, what, and how much, shall be the "just compensation" for any property it may choose to take, and apply to public use? Then, indeed, is the constitutional limitation upon eminent domain worse than a delusion. It is but the gilded snare of a despotism purely Asiatic.

III. The *rhapsodies* on legislative omnipotence, I will leave untouched. They are proper subjects to be dealt with by the court alone. They are logic turned into rhetoric for the purpose of preparing the minds of the court to surrender the highest judicial prerogative, that of passing upon the constitutionality of all laws.

Warrant of jurisdiction in the common council: This was our second general division. It may be dispatched in a few words.

The charter requires the commissioners to give notice of "the filing of the assessment roll," and that at the next regular meeting of the common council, &c., *they* will apply for "a confirmation of the said assessment." Charter, 72, 73.

No such notice was given. The commissioners did not give notice at all of their own past or prospective action. But the notice actually published was "that the board of public works had completed the assessment roll, and that the board of public works would apply for a confirmation of such assessment."

Now the facts stated in this notice were either true or false.

Suppose them to be true. Then it was the board of public works, and not the commissioners, that had completed the assessment and filed the roll, and that were to apply for a confirmation. But every reader of the newspaper in which the notice appeared, necessarily knew, as being presumed to know the law, that the board of public works had nothing to do with such a matter. And therefore the publication could be no legal notice to any one.

Then suppose the facts set forth in the notice to be false. No one will pretend that a falsehood, though published in all the newspapers of the world, can operate as a valid notice.

Besides, the statute prescribes what the notice must contain; and the giving of the notice was a jurisdictional fact, without which the common council could not take one step in the proceedings. *Eddy* v. *The People*, 15 Ill. 387.

Mr. ARRINGTON also submitted the following argument:

The final grounds upon which the counsel for the city seem to rest their case, are two-fold:

*First.* That the impost in question is not laid for "corporate" or "municipal purposes;" and *secondly.* That such assessments have been sustained as local taxes in several of the States.

As to the *first point* we answer:

I. A corporation can perform no legal act which is not a "corporate" one. It can only act for a "corporate purpose." It can only do what the law of its constitution authorizes it to

do. It cannot act for a private, or individual, in short, for a "non-corporate" purpose. To say, that any act of a corporation is not a "corporate act," is simply a contradiction in terms, as much so as to speak of a square triangle, or of a white black object.

II. The supposition, that the word "tax" means exclusively an impost for the support of mere political functionaries, has no foundation in reason or authority. See *Stein* v. *The Mayor*, 24 Ala. 614; *Pierce* v. *City of Boston*, 3 Metc. 521; and *Mayor* v. *Mount Cemetery*, 7 Md. 533, in which last case it was expressly decided that the words "tax" and "assessment" meant the same thing.

III. If the impost be not for "corporate purposes," it is demonstrably unconstitutional, because corporations can only be vested with the power to tax for "corporate purposes."

Is it credible that the framers of the constitution intended to prescribe the rule of uniformity in taxation for "corporate purposes," but to leave full license for taxation to accomplish any other, or "non-corporate purposes," and by any sort of arbitrary rule, however widely departing from the principle of uniformity?

IV. But suppose the impost to be for any other than a "corporate purpose," and such purpose to be constitutional, then sec. 6, art. 9, of the constitution applies: "The specification of the objects and subjects of taxation shall not deprive the general assembly of the power to require other objects or subjects to be taxed in such manner as may be consistent with the *principles* of taxation fixed in this constitution."

But what principles?

As to general taxation, sec. 2, of the same article answers: The principle of "valuation, so that every person shall pay a tax in proportion to the value of his property."

And as to taxation by "corporate authorities," sec. 5, of the same article answers: The principle of "uniformity."

But the impost in question does not conform to either principle.

Therefore, whether it be for a "corporate purpose," or not, it is unconstitutional.

As to the *second point*, that such imposts have been sustained as local taxes in several states, we answer:

I.   That such cases turned upon the construction of constitutional provisions which obviously referred to general and State taxation, as in the Louisiana cases, where the provision of the constitution was, "taxation shall be equal and uniform throughout the State;" and the courts very properly held, "that the words, *ex vi termini*, pointed to such general taxation as should be co-extensive with the State." *Geatman* v. *Crandall*, 11 La. Ann. 220.

But no such reasoning is possible here, because we have what no other State constitution embraces, namely, a provision which prescribes the rule for "local taxation:" That it must be for "corporate purposes," and must also be "uniform in respect to persons and property within the jurisdiction of the body imposing the same."

Hence, all the cases from other states really confirm our position, because they all concede the necessity of equality in the *burden* under a rule requiring uniformity of *general* taxation, and therefore, for the same reason, there must be equality in the burden, under a rule which requires uniformity of *local* taxation.

II.   The later New York, Ohio and Wisconsin cases, all turned upon a peculiar constitutional provision discriminating between "taxes and assessments," and virtually giving the legislature power to prescribe the rule for both as to cities, villages, &c.   See 4 Comst. 440; 5 Ohio, 246; 10 Wis. 259.

Therefore, these cases, also, sustain our view; because under those State constitutions it was left to the legislature to prescribe the rule of taxation for cities, villages, &c.; while the constitution of Illinois, by its own supreme authority, prescribes the rule, leaving nothing whatever to legislative discretion.

*Third.*   Since this impost can not possibly be upheld as a tax, it can only be legitimate under the theory of a "just compensation" by "proportionate benefits" to adjacent property.

For the constitution declares "that private property shall not be taken or applied to public use without just compensation." Hence it follows:

I. As all the authorities hold that private property — this money, this property — can not be taken for any other than a "public use." It can not be taken at all to be applied to any but a public use or purpose. Sedgwick's Stat. and Cons. Law, 514; *Matter of Albany Street*, 11 Wend. 151; *Bloodgood* v. *M. and H. Railroad Co.* 18 id. 59.

But the adverse counsel say that the paving of these streets is not a public or corporate purpose.

And, therefore, according to their own theory, this money, this private property of ours, can not be constitutionally taken for the purpose of the intended improvement.

II. If the legislature which takes the property can itself determine the kind, quantity, quality and value of the "compensation," the constitution is the greatest and most mischievous piece of nonsense ever conceived by the human mind. What! can the legislature take your property, worth a hundred thousand dollars and say that "the just compensation" is one penny, or a government wagon? What! can the legislature assess my lot to the amount of a thousand dollars for a street improvement, and proclaim that I am benefited to that extent by the increased value of the property assessed, when the property will not sell for half that sum, even after the improvement has been made? What! can the legislature take all the gold in the vaults of a bank, and pay for it by erecting a pest house in the immediate vicinity? But the legislature may do all this, may do any thing, if it can say what shall be the "just compensation" for any property which it may choose to take.

III. If it be said that the legislature left it to the common council to determine the amount and ratio of the "benefits," the answer is obvious and irresistible. All the proceedings are here in the record, and there is not one word on the subject of "benefits," either in the gross or as apportioned.

And the certificate of the commissioners shows that the

assessment was made according to the number of " front feet ;" *ergo*, not according to " benefits."

An impost, according to extent of front, absolutely excludes the idea of an assessment in the ratio of benefits. *State* v. *Hudson City*, 5 Dutch. 116, 117.

*Fourth.* As to the point that the making of sidewalks and streets admits of no distinction, the reply is, that assessments for the construction of sidewalks fall under the power of ordaining police regulations. *Goddard's Case*, 16 Pick. 509. See all the cases collected in *Woodbridge* v. *Detroit*, 8 Mich. 310, a most important case.

*Fifth* It may be said that such assessments have been recognized as valid in England.

To this we answer :

I. If the fact were so, it would be nothing to the purpose ; for all assessments in England are called " taxes," and there the power of taxation is unlimited.

II. But the fact is not so. For in England the commissioners, even when assessing by the acre, are empowered and directed to equalize the burden by considering " all the circumstances."

Summary of our argument : This money is either taken by taxation or eminent domain. There is no other mode but public robbery.

If it be by taxation, it is for " corporate purposes," or it is not.

But if for " corporate purposes," the tax is unconstitutional, because not uniform.

And if not for " corporate purposes," it is unconstitutional, because " corporate authorities " can only tax for " corporate purposes."

Therefore this money is not taken by taxation.

If the money be taken by eminent domain, the method of ascertaining a just compensation, must be provided by the act which directs the taking, *Wallace* v. *Kaslenowefski*, 19 Barb. 120, 121, where the point was expressly adjudicated, reversing the practical legislation of thirty-three years.

But there is no method of ascertaining a just compensation indicated in this charter.

Therefore, the money is not taken by eminent domain.

And, therefore, *utraque via data,* the act of taking is unconstitutional.

Where is the *hiatus* in this reasoning? There is evidently no escape from the conclusion, unless by the assertion that the impost in question is uniform. But none of the counsel has ventured to affirm this. The uniformity spoken of in the constitution means uniformity in that which makes the essence of a tax. It means uniformity in the burden, that is, uniformity in the assessment of values, when applied to property; and uniformity in the assessment of tribute, when applied to persons. Would it be constitutional uniformity to tax persons according to the number of inches which they might measure in perpendicular height, or to the number of pounds which they would weigh in the scales? Can it then be uniformity to tax two city lots the same sum, although they differ in value by thousands of dollars; or to tax two lots different sums, merely because they differ in linear front feet, although they are of the same absolute value, and would bring the same price under the auctioneer's hammer?

It is impossible, then, to sustain this impost under the principle of uniformity. And thus, the demonstration is complete.

To sustain the impost under the power of eminent domain is equally impossible.

For it is absurd to say that "the benefits" to the several pieces of property can be equal, unless the values of the pieces· are themselves equal, and *vice versa.*

Hence, an assessment according to front, would probably give one man more compensation than his due; another, much less; and still another, none at all.

Besides, the estimation of "benefits," or "values," or of "compensation" for a loss, or damage, does not appertain to the functions of legislation.

"The legislature has no jurisdiction to determine facts touching the rights of individuals." *Parmalee* v. *Thompson,* 7 Hill (N. Y.) 80; *Elmendorf* v. *Carmichael,* 3 Litt. 472, 478; *Davenport* v. *Young,* 16 Ill. 551.

Therefore, in any point of view, eminent domain is out of the question.

Where, then, is the power, and *what* is it, to take my money, by an arbitrary rule, and expend it in the improvement of a public street?

Respectfully submitted.

ARRINGTON & DENT.

*Addendum.* Remarks upon the argument of Mr. Fuller:

*First.* Mr. Fuller concedes this impost to be an exercise of the taxing power, but denies it to be a "tax" in the sense of the constitution.

*Remarks.* I. The exercise of any power is only another term for the act of that power. Can the taxing power do anything but "tax?" And if it cannot, is not every act of the taxing power a "tax?" Is not the use or exercise of "horse power"—to employ Mr. Fuller's illustration—an act of horse power, or a horse's act? Not the horse himself, as Mr. Fuller strangely supposes, would be my inference!

II. Mr. Fuller admits that the essential element of a tax is the attribute of its being laid as a "burden."

But this impost is laid as a "burden," and without any reference to either "benefits" or damage.

*Ergo,* it is a tax.

III. Mr. Fuller says that the principal meaning of the word "tax," in the constitution, relates to the purpose for which the tax is imposed.

Very well. The constitution declares that taxes for "corporate purposes" shall be uniform, in respect to persons and property within the jurisdiction of the body imposing the same. And he has not dared deny that the improvement of streets is a "corporate purpose." Nay, he even affirms that it is the public which wants the improvement, and not the adjacent owners.

*Ergo,* again, this tax is unconstitutional, because not "uniform."

IV. Mr. Fuller says that, as a matter of fact, under the old system of special assessments in the ratio of "benefits," the

burden was always laid upon the adjacent owners to pay the cost of the whole improvement, whatever might be the benefit, or whether there was any or not.

If this be so, the perjury of commissioners must have been frightful; and the fact is a most solemn warning to the courts to stay their hand in according any further welcome to an iniquity so demoralizing to the sworn officers of the law.

*Secondly.* Mr. Fuller argues that "locality" is the fundamental idea in the Illinois special assessments; but he cannot deny that an equation of benefit and burden is also predicated as a prominent ground of decision in every Illinois case.

*Remarks.* I. We demonstrated in the oral argument, that "proportionate benefits" constitute the essential element of an Illinois special assessment; and that "locality" is merely an incident; arising from the circumstance that benefits cannot, in the nature of things, exist in the absence of locality, although the fact of locality and costly expenditures may exist in the absence of all benefits.

But the gentleman quarrels with my illustrations, and especially with that of "the pest-house."

I will furnish him a better one. Suppose the improvement of a street to cost more than the value of the adjacent lot, even after the street is so improved. Suppose the lot to be sold for the assessment, and not to bring the amount! Here the element of "locality" is present; but the element of "benefit" is absent. Can you have a special assessment in such a case? Can the legislature authorize such an assessment? Can it take private property and apply it to public use by indirect means, when it cannot do so directly? This is an *experimentum crucis*, and shows that it is the element of "benefits" which legitimates a special assessment, and not that of "locality."

II. All the Illinois cases say that special assessments are not "taxes," because when laid in the ratio of "benefits," they are not "burdens;" following the idea so luminously expressed in 4 Hill, N. Y., 82.

But Mr. Fuller concedes that this impost is laid as a burden. Therefore, unless reason is a delusion, this impost is a "tax."

*Thirdly.* Mr. Fuller says that in a case of doubt, the decision must be in favor of the law as constitutional.

Answer. Very true. But where is the doubt here. Demonstration excludes doubt. Many a felon's neck has been saved under the pretext of "a reasonable doubt," by juries; but we have yet to learn that the plea has the same power with courts.

Nor will the opinion of the court impugn the wisdom of the legislature. The charter is one of those things which passed through the General Assembly *sub silentio,* and probably not one member in ten knew any thing of its provisions.

Messrs. SCAMMON, McCAGG and FULLER for the plaintiffs in error, in reply:

We propose to consider but one question, which is made in both the above cases; and that is, whether the provisions of the 21st section of the 7th chapter of the revised charter of the city of Chicago, for raising the means necessary to improve the streets in that city, are, or are not, void under the provisions of sec. 5, art. 9 of the present constitution of this State?

By referring to the brief filed in these cases, by Messrs. Ayer and Adams, on behalf of the plaintiff in error, the court will see how important this question is to the incorporated towns and cities in Illinois. For many years, and under both the old and the new constitutions, the legislature has granted charters with similar provisions to most, if not all, the incorporated towns and cities in the State. Some of these provisions relate only to sidewalks, others to the improvement of the whole street, but the principle involved is the same in all of them.

Sec. 21, chap. 7, rev. char., is the section under which these proceedings were had. It authorizes the board of public works to assess the amount directed to be assessed by the common council, "on the real estate fronting or abutting on the contemplated improvement."

We believe it is not insisted by the defendants in error that there is anything wrong in this; and they agree with us

that the cost of improving a street may be lawfully imposed upon the adjoining property; but the real question is, *in what manner that imposition shall be laid ?*

The section further provides that the "assessment shall be made in such manner as nearly as may be," that each parcel of land on each side of the street "shall sustain the cost and expense of making the improvement upon that half of the street directly in front of it." This is the substance of the provision.

In our opinion, there is nothing in this provision of the charter repugnant to reason or justice. It only requires the owner of a lot of land, fronting upon a street, to bear such a proportion of the cost of improving that street, as his front upon it bears to the whole property fronting on the street. The cost of paving a street, or of otherwise improving it, is absolute, according to the kind of improvement made, and has no reference or relation to the value of the property fronting upon the street. Fifty feet of pavement costs the same (other things being equal) in front of a lot worth one hundred dollars per front foot, as it does in front of one worth one thousand dollars per front foot.

On the other hand, so far as these cases show, or we have any knowledge, the benefits resulting from such an improvement of the street are conferred upon the adjacent property, in proportion to its front upon the street, and not in proportion to its value. For instance, in case of two lots lying side by side upon a street about to be paved, one is unimproved, and worth $5,000, the other has a fine house upon it, which, with the lot, is worth $15,000, and the absolute cost of improving the street is $500 in front of each lot, it is not shown by the evidence in these cases, and we believe it is not true as a matter of fact, that one lot is benefited three times as much as the other on account of its greater value. *Washington* v. *The Mayor, &c., of Nashville,* 1 Swanst. Tenn. 177, and *Mayberry* v. *The Corporation, &c., of Franklin,* 6 Humph. id. 368, where this view of the facts of such cases is fully stated.

It is insisted for the defendants in error, that there must, in

such a case, be an estimate of the benefits and damages to each lot fronting on the street, and as the result of this estimate, that each owner shall only contribute to the cost of the improvements such sum as appears to be the net benefit resulting to his property. Now, in whatever way this work be disguised, and by whatever softness of phrase it be expressed, two *facts* will continue to exist; first, the work will be done, because the public necessity and convenience require it; secondly, it will be done at the expense of the property fronting upon the street, for that is the mode sanctioned by long usage, as well as positive law, in this and other States. It matters not by what name the expense of the work is known to the parties who have to pay it, whether " tax " or " assessment," nor whether those parties are considerately informed, that in the opinion of the public authorities, their property will be benefited just the amount of the cost of the work, and therefore they must pay that sum into the treasury, not as a tax or burden, but as an equivalent for something given them, or whether they are told that the public good requires the street to be improved, and they must pay for it, because they are the owners of the lots fronting on the street.

To apply this to the first of these cases: Wabash avenue must be improved and paved, and the owners of property fronting on that street must, in some way, bear the cost of it; and the question is, whether the constitution of this State inhibits the apportionment of that expense upon the parcels of land fronting on that street, directly in proportion to their number of front feet ?

I. The provisions of the constitution and of the city charter must be construed together, so as to give effect to both of them, if possible. *The People* v. *Marshall et al.*, 1 Gilm. 689.

The constitution of this State is not a grant of power to the legislature, but a limitation of the law-making power, and this limitation is to be construed strictly in favor of the legislature. *Sawyer* v. *City of Alton*, 3 Scam. 129 ; *The People ex rel. Burgess* v. *Wilson*, 15 Ill. 392 ; *Field* v. *The People*, 2 Scam. 80 ; *Prettyman* v. *The Supervisors of Tazewell Co.*, 19 Ill.

441; *The Firemen's Benevolent Association* v. *Lounsbury*, 21 Ill. 513; *Hill* v. *Higdon*, 5 Ohio, 243; *Bonsall and Wife* v. *The Town of Lebanon*, 19 id. 418; *Scovill* v. *The City of Cleveland et al.*, 1 id. 127.

These Ohio cases deserve full consideration.

II. It was competent for the legislature to establish this mode of providing the means of improving the streets in the city of Chicago, unless that mode is prohibited by the constitution. Cases cited above. Sedg. on Stat. and Con. Law, 554. *Providence Bank* v. *Billings*, 4 Pet. 514; *Mills et al.* v. *The Co. of St. Clair*, 2 Gilm. 237; *Garrett* v. *The City of St. Louis*, 25 Mo. 505; *Kirby* v. *Shaw*, 19 Penn. 258, (7 Harris); *Bennett* v. *Boggs*, 1 Bald. 74, 75; *Clarke* v. *The City of Rochester*, 24 Barb. 446.

This is the case reported in the Am. Law Reg. for March, 1847. *Shaw* v. *Dennis*, 5 Gilm. 417; *The People* v. *Thorbur*, 13 Ill. 557; *Atkins* v. *Hinman*, 2 Gilm. 449.

III. The word "taxes," as used in the 5th sec., art. 2, of the constitution, does not include "assessments" laid upon lots for the improvement of streets in front of them.

The imposition and collection of these assessments is an exercise of the taxing power, but that does not bring them within the meaning of the word "taxes."

So held in case of an assessment or requisition for labor on the highways, which was a *per capita* tax, without regard to property. *Town of Pleasant* v. *Kost*, 29 Ill. 490.

And in a case for widening a street. *City of Peoria* v. *Kidder*, 26 Ill. 351; *McBride* v. *City of Chicago*, 22 id. 574; *Garrett* v. *The City of St. Louis*, 25 Mo. 505.

So held where the legislature passed an act, exempting canal lands from "taxation of *every description* by and under the laws of this State." *Canal Trustees et al.* v. *The City of Chicago*, 12 Ill. 506; Sedg. on Stat. and Const. Law, 501, 502, 503, and cases cited.

So held where a direct tax of one dollar per acre was laid upon land adjoining a proposed improvement, to defray the cost of it, notwithstanding a constitutional provision which

required property to be taxed in proportion to its value. *Egyptian Levee Co.* v. *Hardin,* 27 Mo. 495; *Burnett* v. *The Mayor, etc., of Sacramento,* 12 Cal. 76; *Weeks* v. *The City of Milwaukee,* 10 Wis. 242; *Williams* v. *The Mayor of Detroit,* 2 Mich. 560; *Woodbridge v. The City of Detroit,* 8 id. 276; *The People ex rel. Griffin* v. *The Mayor of Brooklyn,* 4 Comst. 419; *Brewster* v. *City of Syracuse,* 19 N. Y. 116.

So held where the expense of grading and paving a street was laid upon the adjacent property in proportion to the front feet. *Schenley* v. *The City of Allegheny,* 25 Penn. (1 Casey) 128; *Foster* v. *The Commissioners of Wood County,* 9 Ohio, 540.

And in 6 Humphrey, 368, and 1 Swanst. 177, the same was held of assessments per front foot for paving streets in Nashville. Angell on Highways, sec. 168 *et seq.*

These authorities suffice to show that, not only in Illinois, but in many other States, and indeed wherever the question has arisen, such "assessments" as those now under consideration, are not included in the word "taxes," either in constitutions or in legislative enactments. They are laid upon property, by an exercise of the "taxing" power; they draw money from the citizen; they may be, and generally are, burdens upon him; but still they are not "taxes" in the sense in which that term is ordinarily used in constitutions, laws, or private legal documents.

IV. "Assessments" being thus distinguished, for some reason, from "taxes," the next inquiry is, what is the distinction between them, and on what reason does that distinction rest?

The distinction lies in the different objects for which these two burdens are imposed, an assessment being for a special local object, and a tax for some general or public one. TREAT, Ch. J., 12 Ill. 406; RUGGLES, J., 4 Comst. 419; *Mayor and Aldermen, etc.,* v. *Maberry,* 6 Humph.; *Washington* v. *The Mayor, etc., of Nashville,* 1 Swanst. 177.

The distinction rests upon this reason: That it is equitable and just that those who receive the benefit of these improvements shall bear the burden of them.

It is insisted, for the defendants in error, that the distinction lies in the manner in which "taxes" and "assessments" are imposed; the former being exacted without regard to "benefits" to the taxpayer, while the latter have been often laid in proportion to damages and benefits. But in no case decided by this court, has the decision been placed on this ground. In all the cases the distinction has been taken between the *objects*, and not the *manner* of the imposition.

On this point, see especially 12 Ill. 403; 29 id. 490, and 26 id. 351.

In 12 Ill. 406, the court relied upon the case of *The Northern Liberties* v. *St. John's Church*, 13 Penn. 104, where the assessment was apportioned upon the front foot. In 27 Mo. 495, it was laid upon the "acre;" in *Hill* v. *Rigdon*, 5 Ohio, 243, it was laid upon the front foot. In 29 Ill. 490, it was imposed *per capita*. In 10 Wis. 242, it was laid upon the front foot. And so it was in the case of *The City of Lexington* v. *McQuillan's Heirs*, 9 Dana, 513; and in *Foster* v. *The Commissioners of Wood County*, 9 Ohio, 540, the burden was imposed upon the acre.

So that in no case has the decision that these "assessments" are not "taxes," been placed on the ground that they were imposed upon property in proportion to benefits and damages, but always upon the ground that they were local and special in their objects and character.

We conclude from these premises, that these "assessments" are not within the constitutional limitation upon the taxing powers of municipal corporations; and if they are not, then the power of the legislature over the manner of making them is unlimited, and although the mode provided in these cases may or may not be the best, yet the case is resolved into a mere question of the power of the legislature to authorize it to be done in this way — with its expediency the court has nothing to do.

V. The words "corporate purposes," in section 5, article 9, of the constitution, refer to the general purposes and business of the municipal body, for which taxes are levied, and not to the local and special objects for which assessments are imposed.

We think a fair interpretation of the words "corporate purposes," only includes such "purposes" or objects as relate to the whole "corporate" body, like salaries of public officers, etc., and that in this general and enlarged sense of the words, local improvements of streets, alleys, etc., which only directly concern the persons living on those streets or alleys, are not included. The case of *Johnson* v. *The County of Stark*, 24 Ill. 75, is not inconsistent with this view, for there the county was authorized to contract a "corporate" debt, and levy a general tax to pay it. That county debt was a "corporate" one, concerning the whole municipal body, widely differing from a tax or assessment to make or improve a highway in a city, for which the city is not liable as a corporation, but the municipal power is exercised to compel certain citizens to make a designated improvement, for which the city is not a debtor.

VI. But if these "assessments" are made for "corporate purposes" they are, under the charter of the city of Chicago, "uniform in respect to persons and property within" that city.

It may well be held that the "uniformity," required within the jurisdiction of the body imposing the "tax," or "assessment," is an uniformity of *system*, which is possible, and not of *results*, which is impossible. *Town of Pleasant* v. *Kost*, 29 Ill. 490; *Smith* v. *The Corporation of Aberdeen*, 25 Miss. 458; 6 Humph. 368; 1 Swanst. 177.

This assessment was not imposed by an exercise of the right of eminent domain. *The People ex rel. Griffin* v. *The Mayor of Brooklyn*, 4 Comst. 419; *Garrett* v. *The City of St. Louis*, 25 Mo. 505; Sedg. on Stat. and Const. Law, 499, 500 to 507; *Sharpless et al.* v. *The Mayor, etc., of Philadelphia*, 21 Pa. 147; *Commonwealth* v. *Alger*, 7 Cush. 53; Blackw. on Tax Titles, 7; *Burnett* v. *The Mayor, etc., of Sacramento*, 12 Cal. 76.

See Judge McLEAN's statement of the difference between the power of taxation, and the right of eminent domain, in the case of *State Bank of Ohio* v. *Knoop*, 16 How. 391.

It is not an exercise of the right of eminent domain, because no specific property is *taken* from the citizen, but additional burdens are laid upon his property; his land is left him, but he

is required to pay money as his share of the expense of improving that land. This disposes of the argument of the defendants in error, against these proceedings, on the ground that they are not consistent with the usual mode of exercising the right of eminent domain. Ang. on Highways, secs. 76–78.

As to difference between taxation and assessment see the same, sec. 169, and following: Smith's Com. 466 to 500; Red. on Railways, 111, chap. 11.

VIII. Those clauses of the constitution of Illinois, which provide that no citizen shall, in any manner, be deprived of his property, etc., do not apply to taxation, as was held in New York in *The People* v. *The Mayor, etc.*, 4 Comst. 419. And see other cases cited in Sedgwick on Stat. and Const. Law, 502; *Nichols* v. *The City of Bridgeport*, 23 Conn. 189.

By referring to the brief of our associates filed in these cases, the court will see, that by a long and uniform course of legislation, the provision of the constitution now under consideration has not been understood by the legislature to impose any limitation upon its power to regulate the manner of levying and collecting assessments, for the purpose of improving streets. This contemporaneous construction is entitled to great respect, and will not be disregarded by the courts. *Isaacs* v. *Steel*, 3 Scam. 98; *Bruce* v. *Schuyler*, 4 Gilm. 221; Smith's Com. 739; Sedgwick on Stat. and Const. Law, 251.

This rule applies as well to the construction of constitutions as of laws. Sedgwick, 593; *Ogden* v. *Saunders*, 12 Wheat. 290.

The whole matter is reduced to these few simple elements: That the 21st section of the 7th chapter of the revised charter of the city of Chicago, is an express grant of power to the authorities of that city to impose the cost of improving the streets in that city upon the adjacent property, in proportion to the front foot; that for many years the legislature of this State, both under the old and the present constitution, has made similar grants of power to many other cities and towns in this State; that these grants have never before been assailed as unconstitutional; that for twelve years and more this court has maintained the proposition that assessments for improving

The City of Chicago *v.* Larned et al.

streets are not "taxes" within the meaning of that word as used in section 5, article 9 of the constitution; that the same course of decision has prevailed in all the other States where this question has been raised, and that without regard to the manner in which the imposition was laid; that the authorities upon which the first case decided in this State is founded, do not make any distinction as to the manner in which the tax is laid, in deciding whether or not it is a "tax" as that word is used in either State constitutions or general laws; that the true distinction between "taxes," and "assessments," lies in the *objects* for which they are laid, and not in the *manner* of apportioning them among those who are to bear the burden; that the construction of the law and the constitution for which we contend will give both full effect and preserve their consistency with each other, while the contrary construction will disregard a legislative interpretation of the constitution, continued for a long series of years; will overthrow similar provisions in a great number of town and city charters, and also sales of property for non-payment of such impositions; will overturn all the previous decisions of this court or place them upon new and unlooked for grounds; thus causing great confusion, uncertainty and loss in the exercise of this class of corporate powers, and for the time wholly suspend all street improvements in towns and cities organized under similar charters to the one now before the court, and run counter to the course of authority on this question in other States. We therefore submit, that whether reason, practical convenience, or judicial precedent be considered, the decision of the court below upon this point was erroneous, and ought to be reversed.

We are instructed to respectfully suggest to the court that the public necessity requires as early a decision of this case as the convenience of the court will permit.

Messrs. BARKER and TULEY, for the defendants in error, submitted the following brief and argument:

We desire to call the attention of the court to a few points

not touched upon in the brief of the Hon. A. W. ARRINGTON, our colleague in the cause.

I. As to the objections 4 and 5, which are as follows:

4 and 5. "The ordinance directing the improvement was not petitioned for by the owners of a majority of the property to be assessed, and no notice was given to the property owners of the intention of the board of public works to recommend it; nor did the property owners have any notice of the pendency of such recommendation before the common council, previous to the passage of the ordinance."

Sec. 3, chap. 7, of the new charter of the city of Chicago, provides, that all applications or propositions for the paving of streets, &c., shall be first made to the board of public works, or, if first made to the council, shall be by the council referred to the board.

That the board shall investigate the same, and if they determine the improvement necessary and proper, they shall report the same, accompanied with an estimate of the expense thereof, and a proper ordinance or order directing the work. If they do not approve, they shall report the reasons why, and then the common council may, in either case, after having first obtained from the board an estimate of the expense, order the doing of the work. That the board may in like manner recommend, whenever they think proper, the improvement, though no application may have been made therefor; " *and in all cases the common council*, after having obtained from said board an estimate of the expense, *may make such changes in the proposed plan as may be petitioned for by any of the owners of the property to be assessed.*"

In this proceeding the board recommended, without any application of any property holder, that Wabash avenue should be paved with Nicholson pavement, sent their recommendation with the ordinance, accompanied with the ordinance, and the ordinance was passed by the common council. No notice was given of the recommendation or of the intention of the board to make, or of the council to order, any such improvement, and no opportunity given to the owners of the property to petition for a change in the proposed plan.

The first knowledge the property owners could have, would be the passage of the order that the street should be curbed, filled to grade, and paved with Nicholson pavement from Randolph to Fourteenth street; and immediately upon the passage of that order, the property of each one became fixed in its liability to pay "the cost and expenses of making or completing the improvement upon that half of the street directly adjacent to or in front of the same." See sec. 21. chap. 7.

It is true that the charter provides for notice that the commissioners will meet to make the assessment, but the only right the property holders would have before the commissioners would be to object to his property being assessed more than the cost and expense of doing the work; he could not object to the plan; to the length or shortness of the improvement; to the kind of improvement; nor could he petition then for a change in the plan.

Does not the passage of the order amount, in effect, to a condemnation of his property, without an opportunity to be heard?

The charter provides that the city shall pay the costs of intersections; the common council, by the order, determine that amount, and fix the liability to pay the remainder upon the property owners, without opportunity to them to question whether the amount deducted for intersections from the sum total (for no estimate is made as to expense of work in front of *each lot*) is excessive or not.

It is true that this court has decided, in *Johnson* v. *The Joliet Railroad Company*, 23 Ill., that where the charter was silent as to notice, no notice would be required; but we say *that this section by necessary implication* requires notice to be given to property owners.

The courts have uniformly construed the authority for these summary proceedings strictly, and have always required that which was clearly designed for the protection of the property holder to be strictly performed. *March* v. *Chesnut*, 14 Ill. 225.

The court, in 1 Dutcher, (N. J.,) *The State* v. *Newark*, p. 426, hold that the council, "so far as regards how much of the expense is to be borne by the city, and how much by individ-

uals, and how much each owner is to bear, they act judicially;" and that "it is a well settled principle, and laying at the foundation of the administration of justice, that no one is to be con demned in person or estate, without an opportunity of presenting his case, and that, too, under a statutory proceeding which is silent upon the question of notice." Citing, 2 Harr. 339; 2 Green, 520; 14 John. 538; 8 Vt. 389; 15 Wend. 374.

If the courts have in so many cases adjudged that where the statute was silent notice was required, can it be contended that where notice is necessarily implied, the court ought not to construe this section as requiring such notice to be given? Whether the board recommended the improvement of its own volition or not, the section says "that in all cases the council may make such changes in the 'proposed plan' i. e., in the plan recommended by the board, as may be petitioned for by the owners of property. How can they petition for a change, if they do not know of the existence of a 'proposed plan'?"

In all cases like this, to hold that no notice is required, would be to hold that no right to petition existed where the board recommended the doing of the work. The statute in such cases would confer no right, if the board can send in a recommendation, and the common council pass the ordinance without any notice of the proposed plan having been given, either by the board or the council.

II.   That no estimate of the expense of the improvement, as required by the city charter, was reported by the board to the council.   Objection 8.

The estimate of the expense is as follows:

| | |
|---|---|
| Curb walls, | $15,036 12 |
| Filling, | 6,712 09 |
| Grading, | |
| Nicholson pavement, | 76,469 27 |
| Total estimate of expenses, | $98,217 48 |
| Less cost of intersections, | 17,127 11 |
| Amount to be assessed, | $81,090 37 |

In this class of improvement each property pays the cost and expense of the work for one-half of the street in front of his land; the estimate is designed to give the property holder information as to what the improvement will cost him, so that he may petition for any change, if he so desires it, and the estimate of sum total for whole work, as above, does not afford him any information as to what this improvement is to cost him. If the improvement was by the front foot, it might; but as some property must necessarily pay more in proportion to its front feet than other property, the estimate of sum total furnishes the property holder no information, whether the board have estimated the cost and expense of the work in front of his lot at three times too much or not; nor does it give any information as to what part of that sum total he will have to pay. The commissioners give notice that they will meet to make an assessment, and the property owner goes to the record of the common council or to the board to ascertain how far he is interested, and sees only this estimate, which gives him no information.

III. No sufficient assessment roll was filed in the clerk's office, nor any duplicate thereof with the board of public works, and said roll was not signed by the commissioners. Objection No. 16.

The ground of insufficiency is the want of the signatures of the commissioners to the assessment roll. The roll is made out, and then on the next page is a certificate of the commissioners as to what they have done, in which they refer to the foregoing assessment roll.

Section 24, chapter 7, of city charter, requires that, when completed, the commissioners "shall sign and return the same in like manner," as in section 13 is required; which last mentioned section requires the commissioners "*to sign* and file *the assessment roll* in the office of the city clerk, and a duplicate thereof in the office of the board."

No certificate is required. They are to sign and return the roll. We think this point comes clearly within the decision in *Chase* v. *Sparhawk*, 2 Foster (N. H.).

In that case there was a list of taxes and a warrant, both on

the same piece of paper. The signatures of the selectmen were to the warrant, and it was contended that the signatures to the warrant, which immediately followed the tax list, was a signing of the tax list.

The court: "The mere official signatures and seals affixed to the warrant were not, in our opinion, a signing of the list of taxes referred to in the same. They did not afford the sanction which the statute prescribes. They did not purport to be anything but the signing and sealing of the warrant alone." "When the provisions of the statutes are plain in their terms, they should be strictly complied with." "We think the reference to the list in the warrant cannot properly be regarded as affecting the list at all." "It could neither render it valid or invalid." "The warrant refers to the list as being a list already made, but it does not make it a list."

The signatures to this certificate do not purport to be a signing of the assessment-roll. The certificate is, that they have completed the assessment-roll, and the reference is to the foregoing assessment. A completed, a signed and finished assessment-roll, is referred to in the certificate, and not an unfinished one. The words are, "in the foregoing assessment-roll mentioned," and that they further certify "that the said assessment-roll embraces all the lots," &c. *Chase* v. *Sparhawk*, 2 Foster, 134; *Sibley* v. *Smith*, 2 Mich. 486; *Foxcroft* v. *Nevins*, 4 Greenl. 72; *Taylor* v. *French*, 19 Verm. 49.

The case of *Sibley* v. *Smith* is said by plaintiff to be of no validity. The court in that case hold "the signatures are the evidence required by the statute of the completion of the roll by the assessors; of its being their official act; they are essential and component parts of a complete roll, without which an assessment-roll would have no more validity and effect than would a deed with a certificate of acknowledgment thereunder written, but the deed not executed." "The certificate is no part of the assessment-roll." "The certificate contains a history of a past transaction," and that the act requiring the certificate to be annexed to the assessment is merely directory, and that "the entire want of a certificate" would not invalidate the tax.

IV. The ordinance for the improvement, and the notices, and all the proceedings, are not sufficiently definite and certain as to the street and part of street to be improved, and it is uncertain where said improvement begins and ends.

In this case the order and all the notices are that the street was to be paved "from Randolph to 14th street, *produced eastwardly.*" The commissioners are required in these notices to specify what the assessment is to be for. Is the end of 14th street, from which a line is to be produced eastwardly, one mile or five miles from Wabash avenue? Must a party obtain a survey to see if 14th street produced eastwardly would or would not throw his property between that produced eastwardly street and Randolph street?

V. The objection in substance is, "that no notice was given by the commissioners who made the assessment of the filing of the assessment roll with the city clerk, and of their intended application to the common council for a confirmation of the same, as required by sections 24 and 13 of chapter 7, city charter; and that, the notice being insufficient, the common council had no power to confirm the assessment."

Section 13, which controls as to the notice, after providing for the filing of the assessment roll with the city clerk, provides, "Notice shall be given *by said commissioners,* by six days' publication in the corporation newspaper, of the filing of such assessment roll in the clerk's office; and that, at the next regular meeting to be held *after the expiration* of such publication, *they* will apply to the common council for a confirmation of said assessment."

The notice which was given is as follows:

## ASSESSMENT NOTICE.

OFFICE OF THE BOARD OF PUBLIC WORKS, }
CHICAGO, October 11th, 1863. }

Public notice is hereby given to all persons interested, that the *Board of Public Works of the City of Chicago* has completed the assessment roll for the curbing, filling, and paving with Nicholson pavement, from Wabash avenue to Randolph

street to Fourteenth street, produced eastwardly, and such assessment roll has been filed in the office of the city clerk. *The board of public works will apply* to the common council of said city, at its next regular meeting to be held on the 19th day of October, 1863, at the hour of 7½ o'clock p. m., for a confirmation of such assessment, at which time all parties interested will have the right to be heard. All persons wishing to object to said assessment must file their objections to the same, in writing, in the office of the city clerk, at least one day prior to such meeting of the common council.

J. G. GINDELE,

FRED. LETZ,

O. J. ROSE,

*Commissioners of the Board of Public Works.*

We contend that the notice is not such as required by the city charter, and that, therefore, the common council had no jurisdiction to confirm the assessment.

In the first place, the notice does not purport to be a notice of the commissioners, but of the board; and secondly, it does not state that the commissioners will apply, but that *the board* of public works will apply.

The board of public works and the commissioners to make an assessment are entirely different bodies.

The board are not required to act in the matter of special assessment except in the examination and recommendation of plans of improvement, and the charter does not design that after the order or ordinance for doing the work is passed by the council, the board shall have anything further to do with the assessment. Every subsequent section refers to and speaks of the commissioners, and although the commissioners of the board act in making assessments, they are clearly substituted for the special commissioners who were appointed in each case under the old charter. Sections 3 and 4 of chapter 7, of city charter, refer to, and mention, only the *board*, and in every subsequent section the commissioners are named.

Section 14, chapter 1, provides that the commissioners, (except

the mayor), except as afterwards provided, shall *act as commissioners to make special assessments.*

In fact, the commissioners to make the assessment may, under the charter, be entirely different persons from the commissioners of the board; for sec. 37, chap. 7, provides that if a commissioner of the board is interested he shall be disqualified from serving in that case, and that *any vacancy thus created, or by absence, inability or refusal to serve, shall be filled by appointment by the* mayor ; and that such special commissioners shall receive two dollars per day.

After sections 3 and 4, which define the duties of the board as to special assessments, sections 5, 6, 7, 8, 9, 10, 11, 12, 13, 20, 21, 23, 24, relating to the proceedings in the condemnation of property and improvement of streets, specify the commissioners as the parties to act, and not the board, showing that the legislature intended that the connection of the board with the improvement ceased upon the passage of the ordinance for the doing the work.

The plaintiff contends, because in section 34 of chapter 7, the charter says, that "in any case, if the first assessment prove insufficient, the board of public works shall make a second," that, therefore, the board of public works and the commissioners to make the assessment are one and the same. In order to make a second assessment, it would obviously be necessary for the board of public works to recommend it, and for the council to pass the order for its collection, and the board in that case would have just the same connection, and no other, with the second assessment that the charter contemplates the board shall have with a first assessment.

That the form of notice presented must be strictly pursued. *Spear* v. *Ditty,* 9 Vt. 282 ; *Culver* v. *Hayden,* 1 id. 364; *Rex* v. *Mayor,* 4 Burr. 2244.

In the case of *Rex* v. *Croke,* 1 Cowp. 29, an objection was made that the act required that the mayor, aldermen and commons, in common council assembled, should make application to the justices, and the record showed that the mayor, commonalty and citizens had made the application ; the court sustained the

objection, " although, in fact, the latter includes the former."
See note. Also, it is there decided " the notice required by
the act ought to have been fully set out and precisely pursued."

VI. The next objection is, said assessment was not made
on· all the real estate abutting on the improvement; and cer-
tain specified lots were not assessed, though they abut on
the improvement, and certain other lots, not abutting on said
improvement, are assessed.

A sum of $81,090.37 was to be assessed by an ordinance
of the council upon the property fronting or abutting on the
improvement. It is admitted that this was not done; and
the fact of its being a mistake cannot help the plaintiff. It
was impossible, if the commissioners had assessed the prop-
erty for the costs and expenses of doing the work immediately
in front of it, that this mistake could have been made. If the
assessment is good, having omitted six lots, the commissioners
could go on and omit every alternate six lots along the whole
improvement.

VII. The last objection to which we desire to call the
attention of the court is, " that there is no sufficient record of
any confirmation of said assessment roll by the common coun-
cil." The only record that there is will be found p 76 of the
abstract, and is as follows:

REGULAR MEETING, October 10; 1863.

" The board of public works returned and asked for the con-
firmation of sundry assessment rolls, to which no objections
had been filed, for the following improvements:

\*      \*      \*      \*      \*      \*      \*      \*      \*

" For curbing, filling and paving with Nicholson pavement,
Wabash avenue, from Randolph street to Fourteenth street, pro-
duced eastwardly."

\*      \*      \*      \*      \*      \*      \*      \*      \*

The rolls were severally confirmed by the passage of the
order of confirmation appended to each. Parol proof had to
be introduced to identify the order which was appended to the
assessment roll. If a loose sheet of paper containing an order

can be called a record, then there was a sufficient record. "A record of all proceedings" of the council is required to be kept by the city charter, sec. 6, chap. 3. We do not think it necessary to examine the other objections, but believe that there are others not referred to above which should be held fatal to any application for judgment by the city collector in this proceeding.

Mr. Justice BREESE delivered the opinion of the Court:

At the February term, 1864, of the Superior Court of the city of Chicago, the city collector filed his report, and applied for judgment upon a special assessment warrant, for curbing, filling and paving with Nicholson pavement, Wabash avenue, from Randolph street to Fourteenth street, against the delinquent owners for their several assessments. Various objections were made to the application by these delinquents, some of which the Superior Court allowed, and refused the application. The city excepted to this ruling of the court, and have brought the case here by writ of error, and assign the same as error.

We propose to examine but one question, raised by the parties, and discussed here with great ability, as the decision upon that determines the whole controversy, and that is, are the provisions of sec. 21, of chap. 7, of the revised charter of the city of Chicago, under which the assessment in question was made, in harmony with the provisions of sections two and five, article nine, and of section eleven, article thirteen of the constitution of this State?

That section of the charter provides, whenever any order is passed by the common council, for the filling, grading, leveling, paving, curbing, walling, graveling, macadamising, planking or repairing of any street, lane, alley or highway, the commissioners of the board of public works shall forthwith proceed to assess the amount directed by the common council to be assessed, on the real estate fronting or abutting on the contemplated improvement. Said assessment shall be made in such manner, as nearly as may be, that each separate block, lot, sub-

lot, piece or parcel of land, on either side of the street, or part of the street, to be improved, shall sustain the cost and expense of making or completing the improvement upon that half of the street directly adjacent to, or in front of the same.

Section 2 of article 9 of the State constitution declares that the general assembly shall provide for levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his or her property.

Section five of the same article provides that the corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

ection 11 of article 13 declares that no person's property shall be taken or applied to public use, without the consent of his representatives in the general assembly, nor without just compensation being made to him.

The plaintiff in error takes the ground, that this section of the charter is an express and lawful grant of power to the authorities of the city of Chicago, in view of these constitutional provisions, to impose the cost of improving the streets in that city upon the adjacent property, in proportion to the foot front; that the legislature, both under the old and the present constitutions, has made similar grants of power to various other cities and towns; that these grants have never before been assailed as unconstitutional; that for more than twelve years this court has maintained the proposition that assessments for improving streets are not "taxes," within the meaning of that word as used in section 5 of this article; that the same course of decision has prevailed in all the other States where this question has been raised, and that without regard to the manner in which the imposition was laid; that the authorities upon which the first case decided in this State is founded, do not make any distinction as to the manner in which the tax is laid, in deciding whether or not it is a tax as that word is used in either State constitutions or general laws; and they argue that

the true distinction between taxes and assessments lies in the
objects for which they are laid, and not in the manner of
apportioning them among those who are to bear the burden;
that the construction of the law and the constitution contended
for will give both full effect, and preserve their consistency with
each other, while the contrary construction will disregard a
legislative interpretation of the constitution continued for
a long series of years; will overthrow similar provisions in a
large number of town and city charters, and also sales of prop-
erty for the non-payment of such impositions; will overthrow
all the previous decisions of this court, or place them on new
and unlooked-for grounds, thereby causing great confusion,
uncertainty and loss in the exercise of this class of corporate
powers, and, for the time, wholly suspend all street improve-
ments in towns and cities organized under similar charters, and
run counter to the course of authority on the same question in
other States.

The defendants in error, on the other hand, insist, that
the impost is a tax for corporate purposes, and not being
"uniform," is, therefore, unconstitutional. That, if not a tax,
it is an exercise of the right of eminent domain, and is uncon-
stitutional, because it does not provide for "just compensation"
to those whose money is taken, and, therefore, the assessment
must be declared void under the constitution, whether con-
sidered as a tax or as an attempt to exercise eminent domain.
They insist, that no one of the decisions of this court goes to
the extent of deciding such assessments valid, and that only in
States having constitutional provisions different from ones on
this subject, and where the taxing power of the legislature is,
in a great measure, unlimited, has this power been judicially
upheld. The summary of their argument presents these points.
The money attempted to be collected is claimed either under
the taxing power, or in the exercise of eminent domain. If it
be by taxation, it is for "corporate purposes," or it is not, and
if for corporate purposes, it is unconstitutional, because not
uniform. If not for corporate purposes, it is unconstitutional,
because corporate authority can only tax for corporate pur-

poses; hence it follows, this money is not sought to be taken by taxation. If the money is taken by eminent domain, the method of ascertaining a just compensation must be provided by the act which directs the taking; but there is no method of ascertaining a just compensation provided in the charter, therefore, the money is not taken by eminent domain; hence it follows, the act of taking, on the proceedings to take it, are unconstitutional.

The plaintiffs in error insist, that this court has decided that a special assessment to defray the expenses of a particular local improvement, such as this in question, is not a tax. Reference is made to several cases which we will notice, and show the grounds on which this opinion was based.

The first case arose under the old charter of the city of Chicago, on a proceeding, on the part of the city, to widen an alley into a street which would include a portion of the property there situate, claimed by the canal trustees, and which was assessed for its proportion of the expenses of the improvement. The principal question made in that case was, whether the real estate belonging to the trustees of the Illinois and Michigan canal, was liable to assessment of this character. The act of the legislature, granting these lands to the trustees, provided, that they should be exempt from taxation of every description, by and under the laws of the State, until after they shall have been sold and conveyed by the trustees. It was contended, that the assessment fell within this exemption. The court held, that the exemption must be regarded as applying only to taxes levied for State, county and municipal purposes. In other words, for purposes of revenue, to defray the expenses of such government, and conducting its operations. It was further held, that the assessment in question had none of the distinctive features of a tax; that it was imposed for a special purpose, and not for a general or public object. The courts say, the improvement is made for the convenience of a particular district; they further say, the property there situated is required to bear the expense, in the proportion in which it is benefited, and that the assessment is precisely in the ratio

of the advantages accruing to the property in consequence of the improvement. It is but an equivalent, a compensation, for.the increased value the property derives from the opening of the street. *Canal Trustees* v. *City of Chicago*, 12 Ill. 406.

This was not a case where the assessment was made upon the " frontage," but upon the principle of burden and benefit in view of sec. 11 of art. 13. Compensation was made for the property taken, by the value added to the remainder from opening the street.

The case of *Higgins* v. *The City of Chicago*, 18 id. 276, was an application for a mandamus to compel the city to collect and pay to the relator the damages which had been awarded him, consequent upon laying ·a street by the city, over a portion of his land within its limits. It was a proceeding in the exercise of the power of eminent domain, and had no connection with the taxing power.

*The City of Chicago* v. *Colby*, 20 id. 614, merely reiterates the language.of the court in 12 id. 406, that a special assessment is not a tax.

In *McBride* v. *The City of Chicago*, 22 id, 576, where the mode in which the city council had exercised the power conferred on it by its charter, to open, widen and extend streets, was considered, it appeared that under the charter, as it then existed, the council were required to appoint commissioners to ascertain and assess the damage and recompense due the owners of lands affected by such improvements, and also to deter_ mine what persons would be benefited by the improvement, and to assess the damages and expenses thereof, on the real estate of the persons benefited, as nearly as may be, to the benefits resulting to each. The court said, while an assessment of this character is not a tax, and differs in some respects from it, it is, nevertheless, in many respects, similar. They both proceed to raise money by authority of law from the citizen, without his assent, and are required to proceed upon the basis of equality, either as to benefits conferred, or in proportion to the ability of the person taxed. Uniformity and equality are, in each, observed, as a principle of justice and duty.

The case of *City of Peoria* v. *Kidder*, 26 id. 351, decides that the city, under this charter, had the right to extend the street, to have the benefits and damages assessed, and the property in question was liable to the burden. It reiterates the doctrine of the other cases cited, that assessments of this character are not taxes, and, therefore, not embraced in, or regulated by, the provisions of the constitution on that subject. It is, in substance, there said, that when, in opening, widening or extending a street, it becomes necessary to appropriate private property to the purpose, the owner must have just compensation made to him, by the public at large, by the city, or by the persons deriving a pecuniary benefit from the improvement. This was a requirement of the 6th section of the charter of that city, which provided, that on award of damages by the commissioners to the owners of real estate, allowance should be made for any benefit which such owners might respectively derive from such improvement. The whole case shows an exercise of power under the right of eminent domain.

The case of *The Town of Pleasant* v. *Kost*, 29 id. 490, holds that an assessment of labor for the repairs of roads and streets is less like a tax than an assessment imposed for widening a street; that the right to impose labor for the repair of a public highway is not to be regulated by the limitation on the taxing power. The number of days levied, and the sum which may be received by commutation, must be uniform within the limits of the district or body imposing the same. All the cases decided by this court, so far as we have examined, hold that these special assessments are not taxes, for the reason, as plainly appears from the opinions delivered, that when laid in the ratio of benefits they are not burdens. It is that element which has reconciled this court to their imposition, and induced the court to range the power to make them, under the power of eminent domain, the "just compensation" being the benefits flowing to the property holder from the improvement, and which are required to be estimated together with the damages. No case can be found, decided by this court, on a principle

The City of Chicago *v.* Larned et al.

variant from this, the equation of benefit and burden forming the ground work of all of them.

How is it in other States? The case of *Garrett* v. *City of St. Louis*, 25 Mo. 505, recognizes this principle of benefits. The court say that the tax in question is not a property tax within the meaning of the constitution. The tax is local, and for local purposes, and is a tax upon benefits and not directly upon property. The cost of the public benefit is made a public burden, and the expense of the individual benefit is placed upon the shoulders of the person who receives it. The case of the *Egyptian Levee Co.* v. *Hardin*, 27 id. 495, decides that, notwithstanding the provision of the constitution which required property to be taxed according to its value, a direct tax of one dollar per annum upon land adjoining a proposed improvement, to defray the expenses of it, was valid. That clause does not apply to local assessments, when the money raised is to be expended on the property taxed.

The case of *Weeks* v. *The City of Milwaukee*, 10 Wis. 242, holds, that these assessments for building streets, side walks, &c., are an exercise of the taxing powers of the State, and that the rule of uniformity prescribed by the constitution extends to taxation by corporations, and that this uniformity implies equality in the burden, as held in *Bank* v. *Hines*, 3 Ohio, 15. This equality in the burden, constitutes the very substance designed to be secured by the rule. But the principle upon which these assessments rest, is clearly demonstrative of this equality. It requires every lot owner to build whatever improvements the public may require, on the street in front of his lot, without reference to inequalities in the value of the lots, in the expense of constructing the improvements, or to the question whether the lot is injured or benefited by their construction. In front of one lot, the expense of building the street may exceed the value of the lot, and its construction may impose on the owner additional expense to render his lot accesssible. In front of another lot, of even much greater value, the expense is comparatively slight. These inequalities are obvious, and the learned  udge delivering the opinion, says he had always

18—34TH ILL.

thought the principle of such assessments was radically wrong. The court held, however, that unsound as the principle might be, on which the power was based, yet the legislature had the power, under the constitution, to establish such a system. Was it not for the constitutional provision, or, if that was the same as ours, the court would have held the assessment void.

The case of *Williams* v. *The Mayor, &c., of Detroit*, 2 Mich. 566, presented the question discussed here, whether the money attempted to be raised by means of an assessment to defray the expenses of improving a public street, is sought to be taken by virtue of the right of eminent domain, or in the exercise of the sovereign power of taxation. The court decides that it is not in right of eminent domain, but was in the proper exercise of the powers of taxation, conferred by the charter on the common council of the city. That charter provides that the common council shall have full power and authority to provide funds for defraying the expenses of such paving of streets, or side walks, as may be deemed necessary, either by assessment on the owner or occupant of such lot, on premises in front of, or adjacent to, which such streets or side walks may be directed to be paved or repaired, or otherwise, as they may direct; and such assessment was, by an amendment to the charter, declared a lien on the lot in front of which the street or side walk may have been repaired or paved. The tax was sustained on the express ground that it was apportioned through a district.

In the case of *The People ex rel. Griffin* v. *The Mayor of Brooklyn*, 4 Comst. 419, the decision is placed expressly on the ground, that such assessments are lawful and constitutional taxation. The learned judge, delivering the opinion, says: "the assessment, therefore, was taxation and not an attempt to exercise the right of eminent domain. And if there be any sound objection to the assessment as a tax, it must be an objection which applies to the principle on which the tax is apportioned, because the object for which the money was to be raised is without dispute, one for which taxation, by a different rule of apportionment, would have been lawful. He further says, that the power of taxation, and of apportioning taxation, or

of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. He further says, there is not, and since the original organization of the State government, there has not been any such constitutional limitation or restraint.

The case of *Brewster* v. *City of Syracuse*, 19 N. Y. 116, proceeds on the same principle as the case in 4 Comstock.

In *Schenley and wife* v. *The City of Alleghany*, 25 Penn. 128, it is held that the act of assembly relating to the paving and grading of streets in the city of Alleghany, and the assessment of the expense of the same upon the owners of lots fronting on such streets, and the manner of collecting such assessments, are a proper and constitutional exercise of the taxing power by the legislature. The reason assigned is, that it imposes the burdens exactly where the benefits are conferred.

The case of *Foster* v. *The Commissioners of Wood County*, 9 Ohio 540, simply decides that the levy of eight cents per acre on all lands within a given distance on each side of a certain turnpike road, is an assessment, and not a tax, and as such, authorized by the constitution as it contains the principle of benefit.

In neither of the States whose courts have made the decisions we have cited, can there be found the same constitutional provisions as is contained in sections two and five of the ninth article of our constitution.

Applying, then, the test of our constitution to the principles established by these cases, we are unable to concur in them.

The framers of our constitution have taken unexampled pains by these separate sections to affirm the principles of " equality " and " uniformity " as indispensable to all legal taxation, whether general or local. Section five is believed to be peculiar to our constitution, and manifests the great anxiety of its framers to place every possible species of taxation upon the only equitable basis conceivable, and is believed to be more stringent than any provision in any other State constitution on the same subject.

If this assessment is to be regarded as an exercise of the taxing power, it cannot be denied that it flagrantly violates these principles of the constitution. To give an example : A and B may own, respectively, two lots lying side by side. The natural surface of A's lot may be twenty or more feet above the established grade, and composed of rocks unfit for building purposes. The natural surface of B's lot may be at grade. An order is passed by the common council to open and grade the street projected in front of these lots. It will cost B nothing, or the merest trifle. It will cost A all his lot will be worth after the street is opened. To what does this amount but to a confiscation of A's lot for B's benefit, and that of others situated like him ? Is it not absurd to call this equal and uniform taxation ? Regarded in the light of a tax, then, it is wholly indefensible.

But the plaintiffs in error hope to escape this conclusion under the guise that it is " a special assessment," and not a tax. Call it a special assessment, then it is demanded on what ground, apart from the taxing power, can property be taken by way of a local or special assessment ? As we understand it, the property of a citizen can be divested only in one of four ways : 1. For taxes ; 2. For public uses by right of eminent domain ; 3. As a penalty for disobedience to, or infraction of, some public law ; and, 4. To enforce payment of his debts.

If, then, a special assessment was not a tax, it must be placed, where the defendants in error place it, under the exercise of the power of eminent domain.

The first mode being ignored by this court as the basis of these assessments, they must of necessity be held to come under the right of eminent domain. They cannot be referred to any other constitutional provision. Power of every description must be referred to some certain source — some " local habitation " must be assigned to it, and if none can be, then it is safe to say it is " vagrant power," or that it has no existence.

How can this right of eminent domain be exercised ? Only under the constitution, by making just compensation. Is such compensation made in this proceeding ? It has been decided by this court, in which this court, as at present composed, does not

wholly concur, that this compensation may be either in money or benefits. It is solely on this ground that such assessments have been sustained by this and by other courts. From the case of the *Canal Trustees* v. *The City of Chicago*, 12 Ill. 406, to the present time, the ruling principle of all of them is, that as the assessments are in the ratio of advantages or benefits, they are lawful; that they are an equivalent for the increased value the property derives from the improvement. The court did not, in any of the cases, find it necessary to specify the clause in the constitution, under which the assessment was justifiable, but as they had already decided it was not a tax, and as they justified it on the ground of benefits, the conclusion is irresistible that they considered it an exercise of the power of eminent domain.

If, then, these special assessments must be referred to this power, as they clearly must, if not a tax, they must be held to be invalid unless they make "just compensation" in some mode, either by money or by benefits. There is no pretense in this proceeding of such compensation being in any way provided for or even contemplated. There is no assessment of special injury or special benefits to individual lots. In the case we have above put, the entire value of A's lot, even estimated after the improvement is made may be taken, and not ten dollars of B's. Where, then, is the benefit to A? He has simply the satisfaction of having his lot confiscated by the public.

It is suggested in the argument of the corporation counsel (Mr. Adams) that the common council, in and by the act of ordering the improvement, "make an estimate that the benefits to the property assessed will be equal to the cost of the contemplated improvement."

The assessment of injuries and benefits is in the nature of a judicial proceeding, and must be surrounded with some sort of judicial sanction. Besides, the "just compensation" required by the constitution is a matter of substance and not of form, and which this whole proceeding utterly ignores.

It is apparent to all who read it, that our constitution is very stringent in regard to equal taxation, whether general or local.

Take away the assessment of injuries and benefits, then special assessments become the same thing in substance as taxes. This will not be denied. Why then should not the same principles apply? But the constitution, while fixing the rule in regard to taxation, is silent in regard to special assessments. Why was this, since they were well known means, at the time of the adoption of the constitution, of local improvements? Undoubtedly, it seems to us, because its framers regarded them as a proceeding under the right of eminent domain, and the property of the citizen as sufficiently protected under the clause requiring "just compensation." As already stated, this compensation may be made by "benefits," but, when these are exhausted, it then becomes a question of taxation, and the principles of equality and uniformity must apply.

The decisions of other courts, which were cited by plaintiff's counsel proceed, as we have said, upon their own constitutional provisions, and so far as they have application to this case under the peculiar provisions of section 5 of article 9, fortify the view we have endeavored to present. At any rate, even if we should seem to differ from them, we must construe our own constitution, and test the acts of all departments of the government, or other authority claiming to be based on its provisions, by it and by it alone.

We regard it as a very plain case, and the section of the charter in question as not in harmony with the sections of the constitution cited.

We have not commented on the cases cited by plaintiffs in error to be found in *Mayor and Aldermen* v. *Mayberry*, 6 Humph. 368, and *Washington* v. *The Mayor and Aldermen of Nashville*, 1 Swanst. 177, for the reason that both these cases are assigned, whether properly or not we do not say, to a power different from the taxing power. The ordinance called in question was an ordinance requiring each owner of a lot to construct a pavement in front of it, and in default thereof, directing the constable to construct the pavement, and to collect the cost of the same from the owners. This was held constitutional and valid, the court deciding that the ordi-

nance did not levy a tax. It only required a duty to be performed for the well being and comfort of the citizens of the town, and was in the nature of a nuisance to be removed. The case in 1 Swanst. is based upon this case.

Other points and authorities have been brought to our notice by the counsel on both sides, which we deem unnecessary to be particularly noticed, the point decided covering the one important ground of controversy. We consider that both the exercise of the right of eminent domain and the power of taxation are limited under our constitution, and the rule with us is deduced, not from general principles, but from the constitution itself, that there does not exist either in the legislature or in any of the subdivisions of State sovereignty a power of apportioning taxes, whether of a general or of a local character, except on the principle of equality and uniformity. It is manifest to us that our constitution established equality and uniformity to be the principle of taxation throughout the State in all its subdivisions of local government.

The power of taxation is a power of all others most liable to abuse. It was the object of the framers of our constitution to guard against that abuse, and while all the persons and property within the limits of a city, for which a local government is established, may be subjected to taxation by the delegated authority of such government for purposes of public utility within those limits, the principle of equality and uniformity required by the constitution must be preserved in the apportionment of such taxation, whatever be the objects on which the tax is to operate. *Municipality No.* 2 v. *White,* 9 La. Ann. 451.

It may then be asked, how can desirable improvements be lawfully made through the agency of special assessments? It will be observed that sec. 5, of art. 9, does not, in terms, authorize a special assessment for corporate purposes, but only to assess and collect taxes for such purposes. A corporate purpose being ascertained and determined on, by the city authorities, the principle should be adopted in order to carry it out, equally required by the constitution and demanded by the

merest justice.  Assess to each lot the special benefits it will derive from the improvement, charging such benefits upon the lots, and the residue of the costs be paid by equal and uniform taxation.

We omitted to notice in its proper place the proposition of the plaintiffs in error, that our constitution, not being a grant of power to the legislature, but a limitation of the law-making power, is to be construed strictly in favor of the legislature. Besides the authorities cited on this point, this court, in the case of *The People, &c.,* v. *The Auditor*, 30 Ill. 438, said, in a doubtful case the doubt is usually solved, and should be, in favor of the legislative power.

Another proposition is also stated by them, that it was competent for the legislature to establish this mode of providing means for improving the streets, unless that mode is prohibited by the constitution.

The general principle is doubtless true, that a State legislature may do any thing not inhibited by the constitution ; but from this, their corollary does not necessarily follow, for the reason, although a particular mode of assessment may not be prohibited, yet, at the same time, the mode adopted must not be repugnant to the general provisions of the constitution defining the taxing power, the purposes for which taxes may be assessed, and mode of levying them.  The mode prescribed, whatever it may be, must be subject to the restrictions and limitations of the constitution.  *Clarke* v. *The City of Rochester*, 24 Barb. 446.

We have examined with much care the case of *Burnett* v. *The Mayor, &c., of the City of Sacramento*, 12 Cal. 76, and also the case of *Woodbridge* v. *The City of Detroit*, 8 Mich. 274, which are much relied on by the plaintiffs in error.  In the case last named, the court was divided in opinion, two of the judges holding such assessments as we are considering, to be authorized by the constitution of the State of Michigan, the other two holding they were not so authorized.  There is no provision in the constitution of Michigan, like the fifth section of article nine of our constitution.  " Taxes for purely

The City of Chicago v. Larned et al.

local public improvements, generally called assessments, are not mentioned in the constitution," says Mr. Justice MANNING, and, therefore, "the power to impose and collect such taxes, like all other legislative powers not mentioned in the constitution, is plenary, and in the exercise of it is subject to legislative discretion only."

What would be a constitutional exercise of power on this subject, by the legislature of Michigan, might not be by our legislature, by reason of the difference in the provisions of their respective constitutions. The argument of Mr. Justice MANNING, with whom the chief justice concurred, adopts the reasoning of Mr. Justice RUGGLES, 4 Comst. 419, and that is based on the absence of any clause in the constitution of New York, limiting the power of the legislature over the subject.

The case in 12 California, was decided on the constitution of that State, which does not contain the provision ours contains, and seems to us, with all the other cases referred to by the counsel for the plaintiffs in error, to be based on wrong assumptions and unsound principles. They all proceed on the ground that these assessments are not the exercise of the taxing power, which provides for equality and uniformity in order to raise revenue for the support of the government, but is a power resting in the legislature, to be exercised according to their discretion; and that the improvements to be made by such assessments, are such improvements, in which the public is only to a limited extent interested, and therefore the burden of making them should be cast on the parties chiefly benefited in an increased value of their property.

We cannot understand how it is, that a law which places the burden upon the property adjacent to the improvement, is a more equitable apportionment than if imposed upon the entire property of the city, ward or district. Nor is it true, that the grading, paving, &c., of a street in Chicago, or other large and growing city, is a mere local improvement, the expense of which adjacent proprietors should wholly bear. It is a matter of public benefit, extending throughout the chartered limits of the city. Are not the owners of property on Wabash avenue

and Halsted street, or on the most remote street in Chicago, and those residing thereon, benefited by the grading, paving, &c., of Lake, Randolph, or Dearborn, or Clark streets? If so, should they not bear a fair proportion of the expense, to be assessed on the principle of valuation and uniformity, and of benefits? It does not follow, as the case we have put shows, that the owner of an adjacent lot is benefited by an improvement, the cost of which amounts to the full value of his lot, and which may require an additional expenditure by him, to make his lot accessible. In these improvements, the whole public are interested, and that public should pay the cost, on the principle we have suggested; that is, assess to each lot the special benefits it will derive from the improvement, charging such benefits upon the lots, the residue of the cost to be paid by equal and uniform taxation. In this way, the demands of the constitution may be fulfilled, and injustice done to no one.

Entertaining no doubt that this grant of power to the city council is against the fundamental law regulating the subject of taxation, we are compelled, by a sense of our own duty, so to declare, and to hold an assessment for improvements made on the basis of the frontage of the lots upon the street to be improved, invalid, as containing neither the element of equality nor uniformity if assessed under the taxing power; and if in exercise of the right of eminent domain, equally invalid, no compensation whatever being provided or even contemplated by the charter.

The Superior Court having entertained similar views, their judgment must be affirmed.

*Judgment affirmed.*